UNITED STATES SUGAR REFINERY v. PROVIDENCE STEAM & GAS PIPE CO.

(Circuit Court of Appeals, Seventh Circuit.   March 10, 1894.)

No. 61.

**1. CONTRACTS—ACTION FOR BREACH—EVIDENCE.**
The exclusion of a question to a witness in an action on contract cannot be held erroneous, on the ground that the question related to a condition of the contract, where it also included other conditions not embraced in the contract.

**2. SAME.**
In an action for the price of automatic sprinklers furnished by plaintiff to defendant under a contract providing that the size of the pipes should conform to the schedule required by defendant's underwriters, evidence of the cost of making the sprinklers conform to a certain schedule, not shown to have been adopted by the companies that insured defendant's property, is not admissible.

3. SAME.
    In such action, a report on the sprinklers furnished made by an inspector appointed by an association of insurance companies is admissible in evidence to show that the insurance companies to whom the report was transmitted acted upon it in insuring defendant's property.

4. SAME—INSTRUCTIONS.
    The evidence did not show that there were any well-known, printed requirements of insurance companies, which were known to plaintiff when the contract was made. *Held*, that an instruction which assumed the existence of such requirements, and required plaintiff to prove that his sprinklers conformed thereto, was properly refused.

5. SAME.
    Defendant having accepted the sprinklers, an instruction to the effect that any defect in them would bar plaintiff's right to recover anything was properly refused.

6. APPEAL—OBJECTIONS NOT RAISED BELOW—INSTRUCTIONS.
    On an instruction that defendant was entitled, under a counterclaim, to be allowed for an amount expended by him, an objection that it did not embrace expenditures which the evidence showed he would be obliged to make is not available on appeal, if the attention of the court below was not called to the matter.

7. COSTS ON APPEAL—VOLUMINOUS RECORD.
    Where the printed record is unnecessarily prolix, but it does not appear from the record itself which party is responsible therefor, the facts on that point may be presented to the court of appeals by affidavit or other proof, so that the unnecessary costs may be taxed to the proper party.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This was an action of assumpsit by the Providence Steam & Gas Pipe Company against the United States Sugar Refinery. At the trial the jury found for plaintiff. Judgment for plaintiff was entered on the verdict. Defendant brought error.

Edwin Walker and Arthur J. Eddy, for plaintiff in error.

Richard Prendergast and Thomas Cratty, for defendant in error.

Before WOODS, Circuit Judge, and JENKINS and BUNN, District Judges.

JENKINS, District Judge. By the contract of February 19, 1890, the defendant in error undertook to equip the plant of the plaintiff in error with the Grinnell Automatic Sprinklers, furnishing the necessary piping and labor. It was to be the wet-pipe system. The contract provided that "the sizes of pipe will conform to 'the schedule required by your underwriters." The work was guarantied to be water-tight, and satisfactory in every respect. It was completed in the early summer of 1890. On January 14, 1891, the Providence Company agreed to change the sprinkler system from the wet to the dry system, furnishing the necessaries "to make the same a most complete job, and which shall be satisfactory to your underwriters." The contract further provided, "If it shall be found that the pipes as now erected are not tight enough, you [the Sugar Refinery Company] to pay any cost we [the Providence Company] may be put to to make them so, which shall be a nominal figure in any event." The change was effected and completed by May 5, 1891. Upon the building so equipped, insurance was procured

between November, 1890, and August, 1891, in some 68 companies, to the amount of at least $376,000. Prior to November, 1891, and until some three months after suit brought, there was no controversy between the parties with respect to the character of the work. Payment was postponed until July, 1891, and then refused upon the sole ground that during the progress of the work a servant of the Providence Company was accidentally killed, and the Sugar Refinery Company feared it might be held liable in damages for his death, and the parties could not agree with respect to the form of the bond of indemnity demanded. On the 7th of November, 1891, the Sugar Refinery complained of inability to get the water out of the pipes, in preparation for cold weather, and denounced the whole system as one necessary to be removed. Under the general issue the plaintiff in error gave notice that it would prove an indebtedness of the defendant in error growing out of the contract, because, among other things:

"The sizes of the pipe did not and does not conform in size to the schedule adopted by the leading insurance companies throughout the country, as agreed and warranted, and that the system and sizes of pipe did not conform to the schedule required by its underwriters, meaning thereby the underwriters of the various insurance companies to which the defendant might apply for insurance, and meaning thereby the well-known requirements of the various insurance companies, as agreed and warranted, whereby the sprinkler system became and was of no use or value to defendant; and by reason of the unfitness of said sprinkler system, as aforesaid, the same afterwards, to wit, on," etc., "became wholly useless to the defendant, and a burden and damage to defendant's various buildings and property, whereby the same must be removed, at great cost and expense to defendant, and to the damage of defendant's building and property, and the entire work of equipping said building with a sprinkler system which will meet the requirements of said contracts and agreements must be commenced and done over again, to the great loss, delay, and damage of said defendant; and various portions of said piping in said system, owing to said imperfect workmanship, have heretofore frozen and burst, and water has collected in various places, causing defendant great loss and damage by reason of said water so collecting and freezing and bursting, in the endeavor to repair said damage and prevent further loss, whereby the defendant was damaged to the amount of fifteen thousand dollars."

The alleged error at the trial mainly relied upon is in the exclusion of the question propounded to the witness West, as follows:

"Let me ask you, Mr. West, aside from the question of leakage, and all expense, if any, required to remedy leakage, from your examination of the system, and your knowledge of its present condition as testified to, what would it cost to properly fix that system so that the water can be properly drained from the system, with as few elbows and dips as possible, with sizes of pipe to conform to this list, to wit: Three-quarter inch pipe, one head allowed; one inch pipe, three heads allowed; one and a quarter inch pipe, five heads allowed; one and a half inch pipe, nine heads allowed; two inch pipe, seven heads allowed; two and a half inch pipe, twenty-seven heads allowed; three inch pipe, forty-six heads allowed; three and a half inch pipe, seventy-eight heads allowed; four inch pipe, one hundred and fifteen heads allowed; five inch pipe, one hundred and seventy-five heads allowed,—and the further requirement that in buildings where the floor area requires more than one hundred and seventy-five heads, or a five inch riser, the equipment must be divided into two systems with two risers. What would be the expense to make that system, as you found it, conform to those requirements, aside from all expense attached to the leakage?"

Prior to the propounding of this question, the counsel for the plaintiff in error had submitted the question of the cost to make the system, as the witness found it, conform to the requirements of a particular schedule, known as the "Chicago Fire Underwriters' Schedule for Requirements of Sprinklers." Upon objection the court ruled the question to be improper, but that the witness might describe the system as he found it. The witness had then proceeded to say that he found certain of the pipes tipped toward the extreme end, and upon some of the floors of the building found more sprinklers than required by the Chicago underwriters on certain sized pipe, and thereupon the question stated was propounded to the witness.

It is apparent to the court, from the desultory conversation which ensued between counsel upon both sides and the court, following this question, that all parties were led away from any view of the purpose of the question as now claimed by counsel. The discussion went to the question whether the Sugar Refinery Company, having obtained all the insurance required upon the plant equipped with this fire extinguisher, could defeat the right of action because in some respects the plant did not comply with the schedule prepared by some company. The court announced that the defendant below might prove the existence of anything that would justify the cancellation of the policies. But this seems not to have been satisfactory to the defendant's counsel, who, upon being questioned by the court if he wished to show that the insurance companies did not stand by these schedules, replied that either the contract, when it says the "requirements," means something, or it does not, and thereupon the objection was sustained. A reference to the contract shows that the stipulation was that the "sizes of pipe will conform to the schedule required by your underwriters." Another stipulation in the contract is this: "The entire work is to be done subject to the approval of your underwriters, and to be accepted by them, which we guaranty will be done." A provision in the second contract is to the effect that the work "shall be satisfactory to your underwriters."

We think the objection to the question was properly sustained, because:

First. If it was desired to show that the sizes of pipe did not conform to the underwriters' schedule, the question should have been limited to that subject, and should not have embraced the other conditions in the question. It is not allowable to embrace in a single question several conditions not required by the contract, joined to a single condition that is required by the contract, and to claim error in the exclusion of the question, upon the ground that it embraced a condition contemplated by the contract. Here the question required of the witness an estimate of the cost of adjusting the proper drainage of the system, of supplying pipes of the sizes conforming to particular schedules, and also of dividing the system into two systems with two risers. The contract does not require that the system should conform to any schedule, except in respect to sizes of pipes.

Second. The question was also objectionable because it refers to the requirement of the Chicago Fire Underwriters' Association, without any proof that that association was the one contemplated in the contract. The expression, wherever used in both contracts, is "your underwriters." That manifestly means the insurance companies to whom the Sugar Refinery Company might apply for insurance, or those companies who should furnish such insurance. And such was the plea of the Sugar Refinery Company, "and that the system and sizes of pipes did not conform to the schedule required by its underwriters; meaning thereby the underwriters of the various insurance companies to which the defendant might apply for insurance, and meaning thereby the well-known requirements of the various insurance companies, as agreed and warranted, whereby," etc. Manifestly, in large measure, this plant was contracted for with a view to reduce the cost of insurance. Hence, the provision that the work should be done subject to the approval of, and should be satisfactory to, "your underwriters." It was conceded that the Sugar Refinery Company had procured all the insurance it desired; and in the absence of evidence tending to show that those insurance companies had issued their policies under misapprehension of the conditions existing, or that any of them had sought to cancel their policies by reason of the alleged defective condition of the plant, there was no room to claim that the work was not satisfactory to the underwriters of the Sugar Refinery Company. The only reference in the contract to a schedule is the clause that the "sizes of pipe should conform to the schedule required by your underwriters." It was necessary, if there was a breach of the warranty in that respect, for the defendant below to show that the schedule presented to the witness was one which the underwriters insuring the plant had established or adopted, and such schedule must be so identified before the witness could be interrogated with respect thereto. There were three schedules offered in evidence, no two of which were alike in respect of their requirements. We have searched the record in vain for evidence upon the question of what schedule was within the contemplation of the parties, or what schedule had been adopted by the underwriters of the Sugar Refinery Company, and this it was essential to show before the schedule to which the witness was referred could be assumed to be the one contemplated by the contract.

It is also objected that the court erred in permitting the introduction in evidence of certain papers purporting to be the report of inspection of the sprinkler system, made by one Born, and in permitting the witness Simonds to testify with respect to the inspection by Born. Mr. Simonds was an insurance agent, and chairman of the "committee on improved risks,"—a body of gentlemen appointed by different insurance companies, and having in charge the subject of risks upon plants supplied with the automatic sprinkler system. The committee employed Born to make examination, inspection, and report upon the plant of the plaintiff in error; and he made such report, which was produced by the witness, and upon which the different insurance companies appointing that committee

acted in taking risks. The court admitted the report in evidence to show that the policies issued were not hastily or carelessly issued, but after inspection; and, in answer to a suggestion of counsel that the report could not be considered by the jury as evidence of the character of the work after the completion of the dry system, the court remarked that, if it was entitled to admission for any purpose, it might come in for the present, and counsel could call the attention of the court to the question later on. Subsequently, the matter was again called to the attention of the court, and the counsel for the defendant in error limited his offer of the report simply as evidence tending to show information to some of the underwriters connected with that committee. The court remarked that the jury had been instructed that the report was admitted simply to show that an inspection was made. We think the evidence was properly admitted for the purpose stated by the court,—as tending to show that the insurance companies to whom the report of the inspection was transmitted acted upon it in issuing insurance upon the plant; and, however that may be, it is clear that there is no available error here, for not only is the bill of exceptions wanting in averment that the report was read in evidence which is essential (Association v. Lyman, — U. S. App. ——, 9 C. C. A. 104, 60 Fed. 498), but it declares that the report was not read to the court or to the jury in evidence or in argument.

We proceed to consider the errors assigned with respect to certain instructions which the court was asked to give in its charge to the jury. The first instruction to which our attention is called is as follows:

"The mere fact that certain insurance companies have issued policies upon the property of the defendant company, or that certain inspectors may have passed the sprinkler system as all right, is not conclusive evidence that the system meets the requirements of the contract. If you find from the evidence that there are certain well-known printed requirements of insurance companies and underwriters, and which were known to the plaintiff company when it made the contracts, then those requirements are to govern, in the absence of other understanding with defendant; and if you find on comparing the system, as put in, with those requirements, that it does not conform to them, then the approval afterwards of any inspector or insurance company, or particular board of underwriters, cannot make good plaintiff's breach of contract. The defendant company is entitled to have the system put in according to the contracts, and is not bound by the acceptance or approval of other parties."

We think this instruction faulty, because it assumes that there were certain well-known printed requirements of insurance companies and underwriters, which were known to the plaintiff company when it made the contract, and that those requirements were to govern, in the absence of other understandings with the defendant. The three schedules, as we have before remarked, were quite wide apart in their requirements, and we have failed to discover any evidence showing that this contract was made in the light of any of them. The contract itself required that the sizes) of pipe should conform to the schedule required by the underwriters of the plaintiff in error. It did not require that the

entire system should conform to the requirements of any underwriter. And we think the charge of the court entirely fair to the plaintiff in error, wherein he instructed the jury that although the defendant's underwriters were satisfied with the system, and accepted risks upon the plant, it was yet necessary for the Providence Company to establish that the system was such a one as the contract called for, and one open to no substantial objection.

It is claimed that the court erred in refusing an instruction to the jury, of which a part is as follows:

"There is evidence tending to show, and it is claimed by the defendant, that, when plaintiff's men made the change to the dry system, they tested it with the air a number of times, and were unable to make the system hold air as it should, whereupon they left it with the water on, knowing that it would not hold air without leaking. Now, if you find from the evidence that plaintiff's employés and foreman in charge, Mr. Scott, tried the air, and found that the system leaked too much air for a dry system, and with this knowledge they wrongfully left the system with the water on, without completing it so it would hold air properly for a dry system, and that the defendant did not learn this until November, then the court instructs you that the plaintiff cannot recover in this action for work done, except in H and G; and if you find the system in buildings H and G so leaky and defective, or otherwise contrary to the agreement and guaranties, then the plaintiff cannot recover in this action at all."

This instruction was clearly erroneous, because, by the terms of the second contract, the expense of making the pipes tight enough for the dry system was to be paid by the plaintiff in error; and a default in wrongfully leaving the system with the water on, without completing it so that it would hold air properly for a dry system, would not prevent the Providence Company from recovering in this action for the work done upon the wet system, although the company might be liable in damages for such default. The latter clause of that part of the request quoted is also faulty in that it assumes that the plaintiff below could not recover at all if the system in the buildings H and G was leaky, or in any wise contrary to the requirements and guaranty. Or, in other words, it was claimed that any defect would prevent a recovery, although the plaintiff in error had accepted the plant, and had obtained insurance in view of the equipment.

In a part of the charge, to which exception is taken, the court instructed the jury that if the system was defective, and the plaintiff was notified and failed to correct the defect, and the defendant had been obliged to expend money in making the system efficient or operative, the defendant was entitled, under a counterclaim, to a reduction for the amount thus expended. It is objected to this part of the charge that it was limited to the amount which the evidence showed the plaintiff in error had expended, and did not embrace expenditures which the evidence showed the plaintiff in error would be obliged to make. It is only necessary to say, in respect to this exception, that the attention of the court was not called to the matter. If counsel desire corrections with respect to the tense used by the court in its charge to the jury, the attention of the court should have been specifically called at the time to the error, if error there was. It will not answer to permit coun-

sel to take exception, after the trial, to what may have been a mere slip of the tongue on the part of the trial judge, when he has been afforded no opportunity for correction. And it may also be properly observed, in this connection, that the issue presented by the plaintiff in error was merely whether the sprinkler system was worthless and valueless for the purposes indicated and contemplated by the parties, to wit, as an additional protection to the plant from fire, and that their claim for damages was for a specific sum stated to have been expended in keeping the works in repair and operation, and for further sums by way of damage to the plant in putting in the system, and the necessary expenses to take down and remove the system.

We think the case was fairly submitted to the jury by the trial judge, and that no error intervened to the prejudice of the plaintiff in error.

It is lastly urged that in case of affirmance an order may be entered requiring the defendant in error to pay the costs of appeal. This request is preferred upon the ground that the plaintiff in error has been put to a needless expense of some $700 in printing a record unnecessarily prolix, compelled thereto by the act of the defendant in error. It is asserted that the plaintiff in error, as required by the rules, tendered a condensed bill of exceptions, which embraced all the testimony pertinent to the errors assigned; that that bill of exceptions was objected to in the court below by the defendant in error, who insisted that a literal transcript of the stenographer's minutes of the testimony upon the trial should be embodied in the bill; and it is stated that the trial judge directed a new bill to be prepared, embodying all testimony introduced at the trial, which was signed by the judge, but that he said at the time that the defendant in error must assume the responsibility for the size of the record. This record contains nearly 400 printed pages, and embodies a large mass of matter irrelevant to the questions upon which the opinion of the court was desired. We can perceive no good purpose to be served in the manner in which this bill of exceptions has been prepared, and we think the subject well warrants the criticism indulged by the supreme court in the case of Railway Co. v. Stewart, 95 U. S. 279, 284. And see Price v. Parkhurst, 10 U. S. App. 497, 3 C. C. A. 551, 53 Fed. 312; Association v. Lyman, 9 U. S. App. ——, 9 C. C. A. 104, 60 Fed. 498. It does not appear upon the record that the trial judge, as is asserted by counsel, placed the responsibility of the unnecessarily prolix bill of exceptions upon the defendant in error. We are unable, by the record before us, to place the fault, if fault there be. We have therefore concluded to permit counsel to present to the court, upon affidavits or other proofs, the facts concerning the matter, that due order may be had in the premises with respect to the proper apportionment of costs.

The judgment will be affirmed.