HUNT v. KILE.

(Circuit Court of Appeals, Seventh Circuit. December 1, 1899.)

No. 553.

**1. APPEAL—PREPARATION OF RECORD.**

The rules of the court prescribing the proper method for preparing the record on appeal, and its prior decisions with reference to the practice in that regard, must be observed by appellants.

**2. EVIDENCE—OPINIONS OF EXPERTS—WHEN INADMISSIBLE.**

Where plaintiff's intestate, while in the employ of defendant, was killed solely by reason of the breaking of a rope provided by defendant, and used in the work about which he was engaged, the only questions for determination, with reference to defendant's negligence, in an action to recover for the death, are whether the rope was the ordinary and usual instrumentality in use for the purpose to which it was applied, and, if so, whether the defendant exercised reasonable care in its selection, and provided a rope of sufficient strength to sustain the strain to which it would probably be subjected; and such questions are not ones to be determined by the opinions of experts, based on a hypothetical statement of facts as to whether the apparatus used "was an ordinarily safe and proper apparatus for the work for which it was used," but questions to be determined by the jury from the facts in evidence, and the admission of such expert opinions is an invasion of the province of the jury, and erroneous.

**3. MASTER AND SERVANT—INJURY OF SERVANT—ASSUMPTION OF RISK.**

Plaintiff's intestate, an experienced workman, was assisting in loading piling on a car; the piles being drawn up on skids by means of a tackle held by an anchor rope. Deceased was working behind a pile being so

98 F.—4

drawn up, when the rope broke, and the pile, in rolling back, struck and killed him. *Held,* that the failure of the employer to furnish chocks for use by the decedent as a preventive of such accidents, if negligence, was a matter of which decedent had full knowledge, and that he assumed the risk from the danger of working without them.

**4. SAME—ACTION—ISSUES.**

In an action to recover for the death of such servant, where it appeared that all the parts of the apparatus used except the rope safely performed their functions, their sufficiency or fitness is not a matter in issue, and it is error to submit such questions to the jury.

**5. WRONGFUL DEATH—ACTION FOR DAMAGES—INSTRUCTIONS AS TO DAMAGES.**

In an action for wrongful death, brought by an administrator, for the benefit of the widow, under the statute of Illinois (2 Starr & C. Ann. St. [2d Ed.] c. 70) which provides that in case of recovery the jury may award such damages as they shall deem "a fair and just compensation with reference to the pecuniary injuries resulting from such death * * * not exceeding the sum of $5,000," it is the duty of the court to instruct the jury as to the basis upon which the damages are to be computed, and the pecuniary value of the life of the deceased to the widow ascertained; and a charge merely stating that the jury may assess the damages at whatever sum, in their opinion, the plaintiff is entitled to, not exceeding $5,000, is erroneous.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This suit was brought by the administrator of Eli M. Davis, deceased, against Robert B. F. Peirce, receiver of the Toledo, St. Louis & Kansas City Railroad Company, to recover damages, under the statute of the state of Illinois, for the death of Eli M. Davis, alleged to have occurred through the negligence of the receiver of the railroad, in failing to furnish proper and adequate machinery and appliances, and in furnishing improper and inadequate appliances, for use by Davis and his co-laborers in their work. The cause was previously before this court upon writ of error to review a judgment in favor of the defendant in error here, and is reported as Peirce v. Davis' Adm'r, 53 U. S. App. 291, 26 C. C. A. 201, 80 Fed. 865, to which reference is had for a statement of the facts in respect of the character of the appliances furnished, and the cause of the accident. The judgment was there reversed because breakage of the anchor rope was the only evidence produced and relied upon to establish the negligence of the master. Upon the retrial of the case in the court below the same evidence was offered as that given upon the first trial, the additional evidence being in regard to the insufficiency and alleged dangerous character of the appliances furnished. The character of the additional testimony given is sufficiently stated in the opinion of the court. A verdict was again found for the plaintiff, and the judgment thereon is brought here for review. Pending the writ of error, Peirce resigned as receiver of the railway; and, by order of the court having jurisdiction of the matter, Samuel Hunt was appointed his successor, and by order of this court was substituted as plaintiff in error.

Clarence Brown, for plaintiff in error.

F. W. Dundas, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

It is matter of regret that in this case we cannot extend the word of commendation expressed in Godkin v. Monahan, 53 U. S. App. 604, 619, 27 C. C. A. 410, 83 Fed. 116, with reference to the manner in which the record is presented to our consideration. The case was

simple. The accident occurred by reason of the breaking of the anchor rope which let down the pile then being hauled up the skids, and Davis, struck by the falling pile, was instantly killed. The issue involved the insufficiency of the appliances furnished by the master for this work, and whether therein he exercised the care imposed upon him by the law. All of the appliances withstood the strain, with the exception of the anchor rope, and the inquiry was necessarily limited to the sufficiency of that rope for the work then in progress. There was perhaps the further question whether the master was negligent in failing to furnish chocks to protect Davis, who was behind the pile, using the pinch bar, from possible injury resulting from the breaking of any of the appliances, letting the pile down upon him. In asking this court to review the proceedings below, we are presented with a bill of exceptions of 223 printed pages,—a copy of the stenographer's minutes of the trial. We are also presented with 150 assignments of errors asserted to have been made by the court below in a trial not extending over four days. A large part of the bill of exceptions is taken up with questions to and answers by five witnesses produced by the plaintiff below as expert witnesses. The right of each witness to give his opinion with respect to the character of the appliances and the manner of the performance of the work was duly objected to. These questions were long, hypothetical questions, based upon the facts of the case. The assignments of errors consist largely in the repetition of questions and answers of this character, propounded to and given by each witness. It does not seem to have occurred to counsel that one error well assigned is as effective as if often repeated, and that one assignment of such an error is quite as forceful as a hundred assignments of like errors. The proceedings on the trial could have been condensed and properly presented within at least one-tenth of the volume. It is unfair as well to the court as to the parties litigant to offer such a record,—unfair to ask the court to unnecessarily wade through such a mass, unfair to the litigants to incur the unnecessary expense. We trust that these observations will correct a practice that is becoming too common in suits at law. We have upon more than one occasion spoken to this subject (United States Sugar Refinery v. Providence Steam & Gas Pipe Co., 18 U. S. App. 603, 10 C. C. A. 422, 62 Fed. 375; Association v. Lyman, 18 U. S. App. 507, 9 C. C. A. 104, 60 Fed. 498), and have also pointed out the correct practice by rule 10 (31 C. C. A. cxlv., 90 Fed. cxlv.), which must not be disregarded.

It is unnecessary to consider seriatim the many questions propounded to, and which the court allowed the witnesses called as experts to answer, with respect to their opinions upon the character and safety of the appliances in question. Any such discussion of them would greatly exceed the proper limits of an opinion. It is sufficient, as we think, to indicate in general terms our views of the questions to be determined, and of the character of the evidence by which they are to be resolved. Every one of the appliances furnished, with the exception of the anchor rope, performed the service for which it was designed. With that one exception, they withstood the strain put upon them, and approved themselves as fit, suitable, and safe

instrumentalities for the purposes for which they were employed. It was therefore wholly immaterial—assuming that the opinions of experts could properly be received—whether, in respect of such appliances as proved sufficient, other and better and safer appliances could have been employed. So, also, it was wholly irrelevant, with respect to the case in hand, whether the men hauling upon the tackle should have been placed upon one side or the other of the flat car; for, in either case, Davis, helping the pile over obstruction with his pinch bar, necessarily stood behind the pile. The simple and only question involved in the inquiry with regard to the character of the instrumentalities used was whether the anchor rope was sufficient, and to that the inquiry should have been limited. The record is replete with questions frequently repeated, and as often objected to, seeking the opinions of the several witnesses upon the character of the different appliances which had proved sufficient, and which were in no sense responsible for the accident. To permit such a course of examination presented to the consideration of the jury a false issue, and necessarily tended to confuse their minds, and might have led them to believe that a verdict could be found upon a general condemnation by the witnesses of all the instrumentalities employed; and this is rendered more probable in view of the very general character of the charge to the jury, and in the absence of any instruction directing their attention to the consideration of the one proximate cause of the injury,—the breaking of the anchor rope. The questions to be determined were whether the anchor rope was a fit instrumentality, and whether the master had failed in the exercise of reasonable care to furnish a reasonably fit and safe instrumentality. The issue was to be resolved by the jury upon proper evidence, and under pertinent instructions by the court. The test of the master's liability in a case like that in hand is whether the appliance furnished was the ordinary and usual instrumentality in use for that purpose. If it be, then it cannot be said that the master has failed to exercise ordinary care with respect to the thing furnished. He is not obliged to supply something that in the opinion of another may be better. We have so ruled in Logging Co. v. Schneider, 34 U. S. App. 743, 749, 20 C. C. A. 390, 74 Fed. 195, where the principle is fully stated.

It was, of course, proper for the plaintiff below to prove, if he could, that it was not usual or customary, in such work, to use a manila rope for an anchor rope. It was also competent to show as a fact, if it be a fact, that the rope employed was of insufficient strength to sustain the strain to which, in the execution of the work, it would probably be subjected. He had also the right to show, if he could, that the rope was old, defective, or worn. But these things must be proven as facts, and they are not difficult to be ascertained. The breaking strength and safe working strength of a manila rope is not a question of speculation or of opinion. These things are determined accurately by tables recognized all over the civilized world, the result of practical tests and of long and extended experience. The jury, if the evidence be conflicting, was the proper tribunal to determine the sufficiency of the rope for the purpose for which it was used, and whether in so supplying that rope the master had failed in the duty

which he owed to his servant. The province of the jury in this regard cannot properly be invaded by witnesses expressing their opinions upon the very subject which it was the duty of the jury to determine. The witnesses for the plaintiff below were severally asked their opinions upon a hypothetical description of all the appliances, somewhat in this form: "Whether, in your opinion, that was an ordinarily safe and proper apparatus for the work for which it was used." This question, in our judgment, was clearly improper. It invaded the province of the jury, and called for the conclusion of the witnesses upon ascertained facts. This was not a question of science, but one upon which, the facts being ascertained, the ordinary and uneducated mind could form an opinion. Railway Co. v. Kellogg, 94 U. S. 469, 472, 24 L. Ed. 256; Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; Seliger v. Bastian, 66 Wis. 521, 29 N. W. 244; Bailey, Mast. Liab. 531 et seq.; 2 Jones, Ev. § 369 et seq.

Much testimony was allowed by the court, under objection and exception, with respect to the failure of the master to supply chocks to prevent the falling of a pile in case of breaking of any of the appliances used in hauling it up the skids and upon the car. Such might well be proper in a proper case. It was allowed here and submitted to the jury without any instruction whatever of the right of the plaintiff below to complain of the alleged omission of duty. It is easy to understand that chocks were desirable, and preventive of injury. If, however, they were not supplied, the omission was apparent to Davis, for he it was who should have used them, if they were furnished, and the danger from the omission was obvious. If, as claimed, Davis was an experienced man, and accustomed to such work, it cannot be asserted that he was ignorant of the danger resulting from the omission to supply or employ them. Under such circumstances, he entered upon the particular work knowing that chocks were not furnished, and with full knowledge of the danger which might result from their absence. He therefore assumed the risk, and the master cannot be held responsible for failure of duty in this respect. Reed v. Stockmeyer, 34 U. S. App. 727, 733, 20 C. C. A. 381, 74 Fed. 186; Peirce v. Clavin, 53 U. S. App. 492, 27 C. C. A. 227, 82 Fed. 550, and authorities cited; Wood v. Heiges, 83 Md. 257, 268, 270, 34 Atl. 872; Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573; Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Rummell v. Dilworth, 111 Pa. St. 343, 2 Atl. 355, 363; Brossman v. Railroad Co., 113 Pa. St. 490, 6 Atl. 226; Dale v. Railroad Co., 63 Mo. 455; Rogers v. Leydon, 127 Ind. 50, 26 N. E. 210.

The charge to the jury contained an excellent exposition, in general, of the duty of the master to the servant with respect to furnishing fit and suitable appliances. It is subject, however, to just criticism in this: that it is general, and not specific with reference to the facts upon which alone liability could properly be predicated. As before observed, the death was caused by the breaking of the anchor rope, all other appliances fitly and safely performing their respective functions. It was not proper to submit to the jury the question of the sufficiency of those appliances that proved sufficient. The consideration of the jury should have been directed solely to the question of the sufficiency of that rope, its character and condition,—

whether it was such an instrumentality as was usually and customarily employed in such service; whether its strength was reasonably sufficient to sustain the strain to which it would ordinarily be subjected in raising a pile of the weight of that in question; and whether the breaking occurred from its insufficiency, or from an unusual and abnormal strain to which it was subjected by those engaged in the work. The jury should also have been cautioned upon the subject of assumption of risk with respect to the chocks, if it were proper in any event to submit to the jury the question of failure of duty in respect to those instrumentalities; but we search the charge in vain for any direction upon this subject.

The defendant below asked for two instructions, as follows:

"(1) The defendant was not bound to supply Davis and his fellow workmen with appliances which were absolutely safe under any strain they might see fit to subject them to, but only such as were safe when used in a reasonable, careful, and prudent manner, and subject to such strain as they might reasonably be expected to be subjected to in doing the work for which they were supplied in such reasonably careful and prudent manner; and if you find from the evidence that the anchor rope which broke, causing Davis' death, was strong enough to resist such strain which might be put upon it in the work for which it was supplied, when used in a reasonably careful and prudent manner, and that at the time it broke, by reason of the number of men called in to assist in the work by Lyensapp, Davis, or his fellow workmen, all of whom were hauling upon the fall line of the tackle which said anchor rope was supporting, said rope was being subjected to an extraordinary and abnormal strain, and such as it could not have been, in the exercise of ordinary care and prudence, anticipated by the defendant that the said rope would be subjected to, then your verdict must find the defendant not guilty. (2) If you find from the evidence that the anchor rope which broke, causing Davis' death, was of sufficient strength to bear the strain put upon it in the performance of the work of loading bridge piles by the force of men provided by the defendant for doing said work, and that said force of men was sufficient, under ordinary conditions, to do said work, and that during the performance of said work, and just before the said rope broke, such men, finding that by reason of a pile becoming fixed on the skids, or meeting either some obstacle during the process of hauling it up on the skids onto the car they were unable to raise said pile, called in a number of bystanders to assist them in raising said pile, and that, by reason of said additional force of bystanders hauling on the tackle supported by said anchor rope, a great and excessive strain was put on said rope, causing it to give way, and leading to the accident resulting in Davis' death, then you are instructed that the defendant would not be liable for an accident resulting from such men so calling in an additional force of bystanders, and through their assistance placing an excessive and abnormal strain on said rope, and your verdict herein must find the defendant not guilty."

We are of opinion that these instructions should have been given. It was the contention of the defendant below that the anchor rope was sufficient, and that the accident occurred by reason of the manner in which the work was performed; that, meeting with some obstruction, which does not seem to be disclosed by the evidence, a large number of bystanders were called in by some servant of the company, and the increased force of men hauling upon the tackle, and seeking to surmount the obstruction by sheer force, placed a sudden and abnormal strain upon the anchor rope, which it could not withstand. If the evidence was conflicting with respect to the sufficiency of the anchor rope for the purpose for which it was employed, it surely was competent for the defendant below to prove,

and for the jury to determine whether in fact the accident was not caused by reason of the sudden and abnormal strain due to the acts of fellow servants of Davis in the performance of the work. We fail to observe that the charge in any respect covers the ground of these instructions, and in this the court was in error.

Upon the subject of damages the court instructed the jury that, if they found the defendant guilty, they should assess damages "at whatever sum, in your opinion, he is entitled to, not exceeding the sum of five thousand dollars." This is the entire charge of the court to the jury upon that subject. The action is given by the statute of Illinois. The sum recoverable is for the benefit of the widow of the deceased. In such case the jury may award such damages as they shall deem "a fair and just compensation with reference to the pecuniary injuries resulting from such death * * * not exceeding the sum of five thousand dollars." 2 Starr & C. Ann. St. (2d Ed.) p. 2156, c. 70, par. 2. There is here no instruction to the jury touching the basis upon which damages are to be ascertained. Within the limit of amount, the amount is left to the unbridled caprice of the jury. The value of the life should be measured by its pecuniary worth to the widow. The statute allows compensation only, and that is to be ascertained by consideration of the age and probable duration of life of the deceased; his earning capacity, and his probable earning capacity during his expectancy of life, had the accident not occurred; his ability to earn more than would be sufficient for the support of himself and those dependent upon him; his liability to illness and possible want of employment. The probable duration of the life of the widow may also be an element to be considered. The jury should have been instructed with respect to those matters. This charge, however, does not limit recovery to compensation, but places the matter at large, and entirely subject, not to the judgment, but to the caprice, of the jury, controlled only as to the amount of the verdict, and is not limited to the evidence in the case. In Carrying Co. v. Schulte, 34 U. S. App. 444, 446, 18 C. C. A. 213, 71 Fed. 489, the instruction with respect to damages was as follows:

"If you find for the plaintiff in this case, the verdict will be, 'We the jury find the defendant guilty, and assess the damages at ———,' whatever you think proper, not exceeding the amount mentioned in the declaration."

We held such a charge to be erroneous; the court, speaking through Judge Woods, observing:

"If the basis for the assessment of damages had been explained in the body of the charge as it ought to have been, the expression quoted would doubtless be deemed to be qualified thereby; but, limited as it is only by the sum named in the declaration, it leaves the jury to that extent an uncontrolled discretion, and is manifestly erroneous."

The charge here cannot be distinguished from the one there under consideration. It is of substance in all these cases of negligence that the jury should be carefully cautioned with respect to the basis upon which its award of damages should be made; and this not only because the parties are entitled to such instruction, but for the further reason that ordinarily, if not always, the appellate court de-

clines to consider the question of inadequate or excessive damages. The judgment is reversed, and the cause remanded to the court below, with instructions to award a new trial.