## HITCHNER WALL PAPER CO. v. PENNSYLVANIA R. CO.

(Circuit Court, E. D. Pennsylvania. February 8, 1908.)

### No. 46.

1. WITNESSES—CROSS-EXAMINATION—EVIDENCE.

Where, in an action against a railroad company for the alleged destruction of plaintiff's mill by fire from sparks, plaintiff sought to establish by a process of exclusion that there was no possible way by which the fire could have been communicated except from a spark negligently emitted from a passing engine, and nearly all of plaintiff's employés testified that smoking was not permitted in the building, and that none of them smoked in violation of the order, defendant was entitled to show on cross-examination of a witness interested in plaintiff company that there had been a fire in the building within a year prior to its destruction, which was reported to witness as having been caused by a lighted cigarette, in order to show that plaintiff's rule against smoking was not observed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 931–936.]

2. EVIDENCE—EXPERTS—QUESTIONS CALLING FOR OPINION.

In an action against a railroad company for the destruction of plaintiff's mill by fire from sparks, a question "how far would a spark on a windy day going through the mesh of the size used by the railroad company carry and be capable of setting fire to paper or other objects of that character" was objectionable for failure to embody the conditions existing at the time of the fire.

3. RAILROADS—FIRES—EVIDENCE.

In an action for damages from fire alleged to have been set by sparks from defendant's engines, evidence of a witness that engineers sometimes punch holes in the spark arresters to make the engine steam better was inadmissible, there being no evidence that such practice existed on defendant's road.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1718.]

4. WITNESSES—COMPETENCY—KNOWLEDGE.

Where a witness had only been on two of the engines of defendant company for a short time, he was incompetent to testify as to the practice of defendant's engineers with reference to punching holes in spark arresters to make their engines steam better.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 80, 81.]

5. RAILROADS—FIRES—EVIDENCE.

Where plaintiff proved that a number of defendant's engines had passed plaintiff's mill between certain hours on the morning the mill was burned, as the alleged result of sparks thrown from such engines, it was proper for defendant to identify the engines passing at that time and show that the spark arresters on each were of the most approved kind, and in good condition at the time.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1727.]

6. EVIDENCE—TRAIN SHEETS.

A train dispatcher's train sheet, though made up from telegraphic information received from operators along his division, was admissible to identify trains passing plaintiff's mill during a specified period of time, in an action for destruction of the mill by fire from sparks alleged to have been emitted from defendant's engines.

7. RAILROADS—FIRES—ACTION—INSTRUCTIONS.

An instruction that, in ascertaining the cause of the fire, the jury might, under the evidence that sparks may be emitted from locomotives without negligence, consider the evidence of the way in which plaintiff used its

property, and peculiarly the evidence of a cellar door being open just prior to the fire, and the existence of waste in and about a bin and baling press near the door at the point where the fire was claimed to have been started, was properly given, because, if the railroad company was not negligent, it was proper for the jury to consider the condition of the property burned to ascertain whether it was not possible for it to have been ignited by an accidental spark from a locomotive having proper spark arresters.

At Law. On motion for new trial.

Henry F. Stockwell, Horace M. Rumsey, and Alex. Simpson, Jr., for plaintiff.

John Hampton Barnes, for defendant.

HOLLAND, District Judge. This is a suit to recover damages for the alleged negligent burning of the plaintiff's paper mill by sparks emitted from defendant's passing engines. The plaintiff company occupied a mill at Holmesburg, Pa., along the New York division of the Pennsylvania Railroad. It was situate on the west side of the right of way, about 41 feet from the west rail of the west track, with a frontage of about 200 feet. There are four tracks on the New York division; the two middle being used for freight trains, and the other two for passenger trains; the west track used for passenger trains west bound, and the easternmost track used for trains running to New York. The fire occurred on Saturday, May 5, 1906, about 11:20 a. m. A number of trains passed the mill about that time and witnesses observed them emitting large volumes of smoke and making a great puffing noise. No one saw a spark emitted from any of these engines and communicate the fire to the mill, but the plaintiff sought to establish that the fire had been communicated to the establishment by a spark emitted from one of the passing engines by proof of such facts and circumstances as would enable the jury to conclude that fire had been caused in that way. Witnesses were called to prove numerous fires along the tracks of the New York division from Frankford to Holmesburg, on both sides of the track, which had occurred for six months prior. It was shown that sparks, varying in size, were emitted by passing engines for a considerable time prior to the fire, and much evidence was adduced to show it did not and could not have occurred from any other cause. The defense, under a plea of not guilty, offered evidence to show that the spark arresters of the engines passing the mill on this day were of the most approved kind used and were in good condition at the time. The jury rendered a verdict in favor of the defendant. Motion and reasons for a new trial were filed, and those necessary to be considered will be taken up in their order.

1 and 2. Frank G. Hitchner, on cross-examination, was asked by counsel for the defendant this question:

"As a matter of fact, was there not a fire in your building within a year prior to this time, which was reported to you to have been caused by a lighted cigarette?"

Both an objection to this question by the plaintiff at the time and subsequently a motion to strike it out were overruled. They are the first and second reasons for a new trial. The plaintiff, in proving

its case, sought to establish, by a process of exclusion, that there was no possible way by which the fire could have been communicated to the factory except from a spark negligently emitted from a passing engine, and nearly all of the employés testified that smoking was not permitted by them in the building, and that none of them did smoke in violation of this order. It was, therefore, entirely proper for the defendant to contradict this evidence by showing that this rule was not observed by the employés, but had been violated by them, and the evidence was competent for that purpose.

3 and 4. A witness was asked by the plaintiff how far, if you can tell me, would a spark on a windy day, going through the mesh of the size used on the Pennsylvania Railroad, carry and be capable of setting fire to paper or other objects of that character? The defendant's objection to this question was sustained. The plaintiff had been permitted to prove by other witnesses the direction and strength of the wind at the time of the fire, and it would have been its right to prove all the conditions existing on the morning of the fire, and argue to the jury the probable distance a live spark, under the circumstances, might be thrown, but if it is claimed that it is a question upon which expert evidence can be produced the question asked of the expert should embody the conditions existing at the time of the fire. I am unable to see what aid the jury could have received from permitting the witness to answer a question so general and indefinite as "how far would a spark on a windy day, going through the mesh of the size used on the Pennsylvania Railroad, carry and be capable of setting fire to paper." It would depend entirely upon how strong the wind was blowing. A windy day is a very indefinite expression. A witness should state facts rather than conclusions, especially in matters of ordinary and general information such as involved in the question objected to. The following are cases which illustrate the rule: Witnesses were not permitted to give an opinion on the burning of a roof of a building in Kiesel & Co. v. Ins. Co., 88 Fed. 243, 31 C. C. A. 515. Opinion was not allowed to be expressed by the witnesses as to whether a particular method of coupling cars is dangerous in R. R. Co. v. Myers, 63 Fed. 793, 11 C. C. A. 439. It was required that facts should be stated instead of an opinion as to the safety of an apparatus in Hunt v. Kile, 98 Fed. 49, 38 C. C. A. 641. An opinion as to what the result would have been if a wagon had made a sharp turn was not permitted in Brewing Co. v. Ort, 113 Fed. 482, 51 C. C. A. 317. And whether it was safe to stand at a certain place on a pier could not be determined by the opinion of witnesses was held in Coasting Co. v. Tolson, 139 U. S. 555, 11 Sup. Ct. 653, 35 L. Ed. 270.

5. A witness volunteered the information that engineers sometimes will punch holes in the spark arresters to make the engine steam up. This, upon the motion of the defendant, was stricken out over the objection of the plaintiff, and is the fifth reason for a new trial. What the witness knew to be done on other roads was not competent to show for the purpose of establishing that practice prevailed on the defendant's road. He obviously was incompetent to testify as to the defendant company's engineers in this particular as he had only been on two of the engines of the defendant company, and then for a short time.

6. John F. Holl, the train dispatcher at Jersey City, in charge of that

portion of the New York division lying in front of the building where the fire occurred, was permitted to testify what time certain trains passed the Cornwall and Holmesburg Junction and Frankford on the day of the fire, from his train sheet which was kept by him. After the plaintiff had proven that a number of engines had passed the plaintiff's building between 10:45 and 11:25 on the morning of May 5, 1906, the defendant company, of course, as a matter of defense, sought to identify the engines passing at this time, and to show that the spark arresters on each engine was of the most approved kind and in good condition at the time, for the purpose of avoiding their responsibility for the fire. This was entirely proper, and in order to show what engines passed at this time, Mr. Holl, the train dispatcher, testified from his train sheet made by him at the time from information received by telegram from the various points, and recorded by him at the time received. The objection is that the evidence is not competent because the information which he recorded on his train sheet was supplied to him by somebody else, and it was not written there by reason of any knowledge which he had in regard to it other than the reported information from others. The train dispatcher in the modern conduct of a railroad has a certain division of track over which he has a certain supervision, and from various points of which he receives telegraphic communication as to the whereabouts of every train running on his section. Upon the accuracy of this information depends the safe conduct of the road, and the lives of hundreds of people depend upon the care with which this information is communicated, received, and utilized by the dispatcher in charge of the division. There is every inducement for each person taking part in the accumulation of this information to be sure of its accuracy, and the dispatcher recording it has every incentive to be certain that he is receiving correct information and making an accurate record of that received. He has telegraphic communication along his whole section, and receives dispatches from different persons at different points as to the exact whereabouts of each train to or from his central point. This, to some extent, provides him with a method of checking up the accuracy of the information received, and, as has been said, this information received from these train experts along the line of a well-conducted railroad is certainly as reliable as reports made of salesmen, draymen, porters, and wharfingers, to bookkeepers who make original entries, which are afterward introduced in evidence as books of original entries, and admitted as competent evidence. Louisville & Nashville R. R. Co. v. Daniel, 91 S. W. 691, 28 Ky. Law Rep. 1146, 3 L. R. A. (N. S.) 1190; Insurance Co. v. Railroad, 138 N. C. 42, 50 S. E. 452.

Seventh, eighth, ninth, tenth, eleventh, and twelfth reasons for a new trial are exceptions taken to the charge of the court. Reference to the charge as a whole we think will show that there was no error committed in any of the portions quoted.

We do not think there was any error committed in qualifying the third point submitted by the plaintiff for the court to charge, and which is now made the thirteenth reason for a new trial. Neither do we think there was any error in affirming the defendant's seventh and eighth points, which are the fourteenth and fifteenth reasons for a new trial.

16. The court affirmed the ninth point submitted by the defendant, and charged the jury that "in ascertaining the cause of the fire, the jury may, under the evidence that sparks may be emitted from locomotives without negligence of the defendant, consider the evidence of the way in which the plaintiff used its property, and particularly the evidence of the cellar door having been open just prior to the fire, and of the existence of the waste in and about the bin and baling press near the door at the point where the fire is said to have started." This was affirmed, because if the railroad company was not negligent, then it was entirely proper for the jury to consider the condition of the property set on fire, for the purpose of ascertaining whether or not it was not possible for it to have been ignited by the accidental falling of a spark from a locomotive having spark arresters of the most approved kind in good condition; in other words, it was competent for the jury to consider the ease with which the fire could have been actually caused without negligence on the part of the railroad company.

For the reasons given, a new trial is refused.