Rockingham, }
    Nov. 7, 1901. }

### CHALLIS *v.* LAKE.

### SAME *v.* SAME.

An expert witness may give his opinion based upon an assumed statement of facts suggested by the evidence.

A general exception to evidence is unavailing if its competency for any purpose can be established, although it may have been accompanied by an erroneous instruction as to its relevancy to which no objection was made.

Where the defendant in an action for malpractice testifies as to his skill and experience, evidence adduced on cross-examination which tends to show that he had not procured a license to practice medicine at the time of the acts in question is admissible in disparagement of his credibility.

A question addressed to an expert witness is properly excluded when it does not appear that he has knowledge of any facts, hypothetical or actual, upon which an opinion could be based.

No exception lies to the rejection of evidence which might properly be excluded on the ground of remoteness, in the absence of indication that such was not the fact.

An instruction is properly refused when there is no evidence to which it can apply.

A request for precautionary instruction against an improper method of reaching a verdict may be denied when there is nothing to indicate its necessity

In an action against a physician for malpractice, the measure of damages is
the loss or injury to the plaintiff directly and naturally resulting from the
defendant's fault or negligence.

CASE, for personal injuries to Junietta Challis caused by the
defendant's lack of skill and by his negligence. Transferred from
the April term, 1901, of the superior court by *Young*, J. By
agreement the two actions were tried together, by a jury. Ver-
dict for the plaintiffs, who are husband and wife.

The defendant is a physician. The plaintiffs complain that
when their child was born the defendant was unskillful and negli-
gent in his treatment of Mrs. Challis. She was badly torn, and
the question was how this wound should have been treated.
There was evidence that the child was born May 23, 1899; that
the mother was so badly torn that when the wound was sewed up,
in 1900, it required from twelve to fifteen stitches; that the de-
fendant attended her regularly for six or seven weeks after the
child was born, his last visit being sometime in July, at which
time she was about the house; that he saw her again in three or
four months after her child was born, when she was doing her
work, and again before February 5, 1900.

The plaintiffs were permitted, subject to the defendant's excep-
tion, to ask Dr. Galvin, an expert, the following question: " In
the case, doctor, of a physician and surgeon attending a woman at
childbirth, and there is a laceration of the perineum that required
twelve or fifteen stitches to sew up a few months afterward, and
he attends her six weeks and then she is up and able to be around
some, and then he sees her again in about three months from the
time of the birth of the child, what should he reasonably have
done for that woman in that condition, no stitches having been
taken to cure the laceration?"

In the cross-examination of the defendant, the plaintiff was
allowed to ask him, subject to exception, if he had a license when
he treated the plaintiff. The jury were instructed at the time
that they could consider the evidence on the question of his skill
and not on the question of his negligence. The exception related
to the admission of the evidence for any purpose, and not the in-
structions limiting it.

In respect of the treatment of the wound the defendant asked
an expert witness: " Then if he failed to sew it up, should you
say it did or did not indicate negligence on his part?" The ques-
tion was excluded, and he excepted. The defendant asked two
women, who testified that they were accustomed to nurse in cases
of childbirth: " In what way does his [Dr. Lake's] treatment
differ from the treatment of other physicians?" The question

was excluded, and he excepted. These women had nursed in cases where Dr. Lake and where other physicians were in attendance.

The defendant requested the following instructions, which were refused excepting as included in the instructions given, and he excepted:

1. If the advisability of adopting a particular method of treatment in cases like the plaintiff's is a question as to which there is a difference of judgment among members of the profession, the jury are not to consider the relative merits of the two systems, but the defendant was at liberty to act according to his own opinion.

2. If the evidence fails to disclose open, visible connection between the negligence alleged and injury complained of, or if the facts are equally consistent with theories that would charge and discharge the defendant, this action cannot be maintained.

On this question the jury were instructed as follows: "The law also imposes upon the physician, for the benefit of patients, the duty of using ordinary care in the application of knowledge and experience to the treatment of patients. Ordinary care is the care men of average prudence would use under similar circumstances. In deciding what would be ordinary care in a particular case, it is necessary to consider the circumstances of that case; for you can readily see that what would be ordinary care in treating a case of chicken-pox might not be such care in treating a case of smallpox, and what might be ordinary care in amputating a person's finger might not be such care in removing his vermiform appendix. To decide whether or not the defendant was negligent in treating Mrs. Challis, you can ask yourselves whether or not he did what the average physician would have done; if he did not do this, he was negligent.

"This duty of using ordinary care does not make the physician an insurer of the lives or health of his patients, nor does it make him a guarantor for the patient's recovery. If he does in any particular case what men of average prudence would have done under the same circumstances, he is without fault, regardless of whether the patient does or does not recover. The fact that the patient does not recover is not evidence of the physician's unskillfulness or negligence.

"The mere fact that the defendant was unskillful or negligent, or both, will not entitle the plaintiffs to recover unless it also appears that his unskillfulness or negligence, or both, contributed to cause Mrs. Challis' condition. If her condition would have been the same if she had been carefully treated by a skillful physician, they cannot recover; for a person cannot be heard to com-

plain of another's fault unless he shows that he has been injured by it.

"For the purposes of this case, a wrong is the cause of such results, and such only, as would not have occurred but for that wrong. So, if you find that the defendant was unskillful or negligent, or both, in order to determine whether any part of Mrs. Challis' condition is due to the defendant's fault you can ask yourselves whether or not the plaintiffs have suffered any loss of time or money, or have endured any pain, which they would not have suffered or endured if the defendant had been skillful and careful."

The defendant also requested the following instruction on the question of damages : "The defendant is not liable for consequences except in so far as they are consequences which an ordinary, reasonable man would have expected to follow from his conduct." This was refused except as included in the following, and he excepted: "You will give the plaintiffs as damages so much money and no more as will compensate them for all loss that the evidence shows you the plaintiffs have suffered as the direct and natural result of the defendant's fault. This will include payment for all loss of time and for suffering that was caused by the defendant's fault, but not for the loss of time and the suffering which were the result of her confinement."

*Paye & Bartlett*, for the plaintiffs.

*Arthur O. Fuller*, for the defendant.

Walker, J. 1. The hypothetical question addressed to the expert, Dr. Galvin, was unobjectionable. Upon an assumed statement of facts, suggested by the evidence, he was asked, in substance, what in his opinion ought reasonably to have been done by the attending physician; that is, what treatment a reasonably skillful physician would have adopted in such a case. The competency of the question is so apparent as to admit of no serious discussion. *Spear* v. *Richardson*, 37 N. H. 23, 24 ; *Perkins* v. *Railroad*, 44 N. H. 223 ; *Wells* v. *Iron Co.*, 48 N. H. 491, 513, 540.

2. The defendant's exception to the question addressed to him on his cross-examination, whether he had a license when he attended Mrs. Challis, was general in its character and related to the admission of the evidence for any purpose. No exception was taken to the court's instruction to the jury, that they might consider this evidence on the question of the defendant's skill and not on the question of his negligence. If it were conceded that

affirmative evidence of that character could have no legitimate bearing on the question of his professional skill, and that the instruction was erroneous, the defendant, having taken no exception to the charge upon this point, has no legal ground to complain of the admission of the evidence, if it was competent for some other purpose. Its use was not limited by the court to the single issue of the defendant's skillfulness; and presumably counsel made use of it in argument for all legal purposes under the ruling of the court. It was admitted as evidence to be considered by the jury upon all points upon which it had a legal bearing, excluding only its relevancy, if any, upon the question of negligence. If it was competent for some other purpose than to prove the defendant's unskillfulness or his negligence, his exception to its admission cannot be sustained.

In defence to the action, he claimed and testified that he had had much experience before 1899 in the practice of medicine, that he was an ordinarily skillful physician, and that he had practiced his profession in this state since 1892. On the other hand, the plaintiffs denied these claims and insisted that he was an incompetent practitioner, not possessing the ordinary qualifications of a reputable physician. To discredit his testimony, it was within the legitimate range of cross-examination, at least, for the plaintiffs to prove by his admission on the stand that he did not have a license, obtained after an examination as to his medical knowledge, to practice medicine in 1899, as required by law. Laws 1897, *c.* 63. That fact, if unexplained, would afford ground for the argument that his testimony as to his qualifications was entitled to little weight. *Gutterson* v. *Morse,* 58 N. H. 165; *Perkins* v. *Towle,* 59 N. H. 583; *Spalding* v. *Merrimack,* 67 N. H. 382; *Lesser* v. *Furniture Co.,* 68 N. H. 343. The evident purpose of the statute was to prevent incompetent persons from practicing medicine and imposing upon the credulity of their unsuspecting patients. *Gage* v. *Censors,* 63 N. H. 92, 94; *State* v. *Hinman,* 65 N. H. 103. The expert testimony of a physician who has not complied with the statute and obtained a license might not be entitled to as much weight as it would otherwise receive, and the degree of credibility attached to it by the jury would often depend very much upon the reason he might assign for his non-compliance with the statute. If he honestly believed that for some reason he was exempted from a compliance with the statutory provisions, the fact that he did not have a license might have little weight upon the question of the soundness of his expert testimony. Hence the admissibility of the evidence adduced on cross-examination in disparagement of his credibility as a witness cannot be doubted.

It does not appear that the defendant gave any reason at the

trial for his omission to obtain a license; but he now suggests in argument that the statute is obnoxious to the constitution and is therefore void. This contention, however, is immaterial. The question of the validity of the statute is unimportant in the present controversy. Whether it is void or not, it was competent for the jury to consider the defendant's unexplained omission to obtain a license, upon the question of the reliability of his testimony. The reason of his omission may have been that he was unable to pass the required examination, or that he failed on some ground to satisfy the regent and the board of examiners that he was entitled to a license or to registration as a physician. Such a reason, if true or if believed by the jury, would have the same logical and legal effect in disparagement of his direct testimony, whether the statute were constitutional or not.

It is also suggested that under the statute he was not obliged to pass an examination and procure a license, since he had been in practice in this state previous to the passage of the act, and was, therefore, exempted from that duty by section 13. But the length of his practice in this state was a controverted fact, and whether it afforded a sufficient excuse for his non-compliance with the statute was a question for the jury to determine.

3. No error appears in the exclusion of the defendant's question addressed to the expert witness. Whether the witness had previously answered a hypothetical question relating to the method of treatment in similar cases, or whether he had obtained any knowledge in regard to the defendant's method of treatment of Mrs. Challis, the case does not disclose. It does not appear that the witness had knowledge of any facts, hypothetical or actual, upon which an opinion could be based. Rog. Ex. Test. 36, 37.

4. The two nurses were not allowed to testify how the defendant's treatment in cases of this character differed from that of other physicians; and in this there was no error. For, while they had nursed in cases where the defendant had charge and in cases where other physicians attended, the proposed testimony may have been excluded on the ground of remoteness. There is nothing in the case indicating that such was not the fact. Whether it might not have been properly excluded on other grounds, it is unnecessary to decide.

5. The first instruction requested by the defendant is based upon the relative merits of two systems or schools of medicine; and as the case does not show that there was any evidence upon that subject to which the proposed instruction could apply, it was properly denied. "Before the court can be required to give particular instructions, there must be evidence, relevant and pertinent, upon which to found them." *Goodrich* v. *Railroad*, 38 N. H. 390, 397; *Hersey* v. *Hutchins*, 70 N. H. 130.

6. The defendant claims that the jury were not properly cautioned against founding a verdict upon guess-work, and for that reason he insists that his second request for instructions should have been granted. Presumably, the jury were properly instructed as to the burden of proof, and there is nothing in the case to indicate that there was any occasion for the instruction requested. The court "is not bound to instruct the jury upon an abstract proposition." *Woodman* v. *Northwood*, 67 N. H. 307, 309.

7. The instruction on the question of damages was correct. Loss or injury to the plaintiffs directly and naturally resulting from the defendant's fault or negligence in his treatment of Mrs. Challis was the legitimate measure of the damages the plaintiffs were entitled to recover. *Leighton* v. *Sargent*, 31 N. H. 119, 136. The defendant's liability is not confined merely to damages for injuries which an ordinary man might have expected would follow from the negligence proved, but includes damages for such injuries as are the direct and natural result thereof as disclosed by the evidence.

*Exceptions overruled : judgment on the verdict.*

All concurred.