[No. 10591. Department Two. January 29, 1913.]

J. G. TAYLOR, *Respondent*, v. A. B. KIDD, *Appellant*.[1]

PHYSICIANS AND SURGEONS—MALPRACTICE—NEGLIGENCE—EVIDENCE —QUESTION FOR JURY. In an action for malpractice the negligence of the defendant is for the jury, where it appears that the defendant treated plaintiff for severe injuries sustained by a fall which included injury to his shoulder, that the shoulder was not then dislocated, but the arm not improving, was subjected to manipulation by the defendant, which dislocated the shoulder, discovered by other physicians, and which required an operation and resulted in a shortening of the arm.

EVIDENCE—EXPERT EVIDENCE—OPINION AS TO MEDICAL TREATMENT —HYPOTHETICAL QUESTIONS. In an action for malpractice, expert medical witnesses may express opinions, based upon a hypothetical question containing a fair summary of the facts shown by plaintiff's evidence, as to whether the treatment given plaintiff was such as an ordinary skillful physician in that community would have used for plaintiff's injury.

TRIAL—INSTRUCTIONS—WRITTEN INSTRUCTIONS — WAIVER—EXCEPTIONS—TIME FOR TAKING. Where, in addition to written instructions, an oral explanation was requested and given, without objection or exception at the time, a written exception filed later on the ground that the same was not reduced to writing and given to the jury, comes too late; since the statute authorizing exceptions to instructions at any time before motion for new trial relates to their sufficiency as matter of law, and not to the manner in which they are given, and since the statute requiring the instructions to be given in writing may be waived.

[1]Reported in 129 Pac. 406.

PHYSICIANS AND SURGEONS—MALPRACTICE—EXCESSIVE VERDICT. A verdict for malpractice is excessive, where it indicates that the jury considered plaintiff's entire loss, through a fall for which he was treated, instead of merely the consequences of the doctor's negligence.

Appeal from a judgment of the superior court for King county, Ronald, J., entered January 30, 1912, upon the verdict of a jury rendered in favor of the plaintiff for $5,500, for malpractice. Reversed, unless $2,000 is remitted.

*C. R. Hawkins* and *Peters & Powell*, for appellant.

*Douglas, Lane & Douglas*, for respondent.

FULLERTON, J.—On March 6, 1909, the respondent, Taylor, while working on the roof of a house, fell therefrom to the ground, a distance of about twenty-five feet, and received severe and painful injuries. He employed the appellant, a physician and surgeon, to attend him. The physician found him suffering with two broken ribs, a severe strain of the left shoulder, and various contusions upon his body. The doctor immobilized the shoulder and ribs, accorded the contusions the usual treatment, and put the patient to bed, where he remained for some little time. Later on the patient was able to get up and move about, and seemingly gradually improved, until the latter part of June, 1909. At this time his broken ribs had adhered, the contusions on his body had healed, and he had acquired some use of his injured shoulder. His shoulder, however, was not thought to be making satisfactory progress, the arm had very little motion, and attempts to manipulate it caused pain, and it had also become somewhat atrophied. The doctor diagnosed the trouble with the arm as an adhesion of the fibrous tissue surrounding the glenoid cavity of the scapula, in which the head of the humerus articulates. This he had endeavored to reduce by massage and manipulation, but without success. In the early part of July the appellant advised the respondent that a more rigorous manipulation of his arm than could be had

without the use of an anaesthetic was necessary in order to break up the adhesions, and appointed a time for the patient to meet him at his office and receive such treatment. The respondent attended at the office at the time appointed and received one such treatment, which gave him some pain and caused considerable swelling in the arm and shoulder. Thereafter, on July 17, 1909, when the pain and swelling from the first treatment had somewhat subsided, the respondent went to the office a second time, and his arm was subjected to a further and more rigorous manipulation by the appellant and his assistant, Dr. Mason.

This last operation left the arm in an inflamed condition and much swelling and pain resulted, causing the patient to take to his bed where he was confined for about ten days. Between this date and August 5 following, the appellant visited him almost daily, and such times as his arm would admit of it, subjected it to movement and manipulation. On the last named date, the appellant discontinued the manipulation, prescribed treatment for reducing the swelling and inflammation, and told the patient to come to his office as soon as the swelling should be reduced, when he would examine his shoulder with an X-ray. The respondent, however, did not call again at the appellant's office, but on September 6, 1909, consulted with another surgeon in Seattle, a Dr. Bates, who subjected him to an X-ray examination. The plate disclosed a dislocation of the shoulder joint, the head of the humerus projecting downward and inward. To correct the difficulty, Dr. Bates advised a surgical operation on the shoulder, which he afterwards performed with the assistance of a Dr. Hanley. On cutting into the shoulder, the doctor found the head of the humerus in a friable and porous condition, so much so that it was deemed necessary to cut away the end of the humerus for some two and one-half inches. After removing this portion of the humerus, the end remaining was set back into the shoulder cavity and the wound inclosed and dressed. At the time of the trial, the wound had entirely healed, the arm, while

much shorter than it was originally, had recovered much of its lost motion and usefulness, having, as the doctor stated, perhaps, seventy-five per centum of its original power and scope of motion.

The respondent instituted this action on March 29, 1911, against the appellant for malpractice. In his complaint he alleged the fact of his injury, the employment of the appellant to treat the same, and the manner of appellant's treatment thereof; alleging as negligence that the appellant dislocated his arm on July 17, 1909, while attempting to break up the adhesions arising from the disuse of the arm following the original injury. Issue was taken on the complaint and a trial had, which resulted in a verdict against the appellant in the sum of $5,500. From the judgment entered thereon, this appeal is prosecuted.

The appellant first assigns that the court erred in refusing to sustain his several challenges to the sufficiency of the evidence; arguing that the evidence fails to show that he did not treat the injury of the respondent with that ordinary diligence and skill which physicians and surgeons, practicing in the same and similar communities, ordinarily exercise in like cases. But we think there was on this question sufficient evidence to make a case for the jury. Aside from the general outline of the evidence which we have heretofore given, there was the positive evidence of a physician who examined the arm shortly prior to July 17, 1909, that there was then no evidence of dislocation, and it will be remembered that this was also the appellant's original diagnosis. There was, therefore, evidence from which the jury could well have found that the appellant dislocated the respondent's arm in his endeavor to remedy its anchylosed condition following the original injury; and the fact of such dislocation, and the further fact that he did not discover the dislocation at the times he subsequently manipulated the arm, was clearly evidence that he did not exercise the diligence and skill required of the ordinary physician and surgeon. For such injury as the re-

spondent suffered because of such lack of diligence and skill, he was, of course, entitled to recover from the appellant.

The respondent was permitted, over the objection of the appellant, to propound to his expert witnesses certain questions containing a summary of the facts the evidence on his part tended to establish concerning the treatment accorded the respondent by the appellant, and an inquiry whether the treatment thus accorded was such treatment as an ordinary skillful physician, practicing in the community in which the appellant practiced, would bring to the care of such an injury. This is assigned as error, because, it is argued, it allows the witness to determine the very question the jury is empaneled to determine. But we think the questions not objectionable on the ground stated. The question whether the treatment accorded the respondent's injury by the appellant came up to the standard of ordinary care and skill was not a question within the knowledge of persons of ordinary learning and experience, and hence, a jury selected from such persons could not know, from the mere description of the treatment, whether or not it was reasonably careful and skillful. It was therefore proper to call on persons, learned in the particular science and familiar with the proper practice in like cases, to state whether, in their opinion, the treatment met the prescribed standard, and this even though the question whether or not it does meet the required standard is the ultimate question for the jury to determine. This question was before us in *Helland v. Bridenstine*, 55 Wash. 470, 104 Pac. 626, concerning which we said:

"The hypothetical question complained of was a fair summary of the facts which the respondent's evidence tended to prove. True the question embodied the very fact that was ultimately to be found by the jury, but this does not render it incompetent. To reach their final conclusion the jury were compelled to draw an inference from the facts proven which involved a question of medical science; that is to say, after all of the facts had been given in evidence, it was still a question whether the disease could be communicated in the

manner recited, and as that question involved a matter of medical science, it was proper to submit to the jury on the question the opinion of an expert versed in that science."

The rule as thus stated is also the general rule. The question arose in *Quinn v. Higgins,* 63 Wis. 664, 24 N. W. 482, 53 Am. Rep. 305, passing upon which the court observed:

"The question of negligence and carelessness on the part of the surgeon in the treatment he gave the plaintiff's leg, while it is one which the jury must necessarily determine upon the whole evidence in the case, is still a question which must be determined mainly upon expert evidence. Certainly the claimed misconduct of the surgeon is not so flagrant that a man entirely ignorant of surgery can form an intelligent judgment as to the propriety or impropriety of the treatment given by the defendant, unaided by evidence of men skilled in surgery and having superior knowledge as to what treatment should have been given to the broken leg under all the circumstances. The defendant was therefore entitled to show, if he could, by witnesses having superior knowledge and skill in surgery, that the treatment he gave the plaintiff's leg was such as a surgeon of ordinary knowledge and skill in his profession would and ought to have given. The exclusion of any material evidence of the expert witnesses offered by the defendant which had a direct tendency to show that his treatment was proper, and such as a surgeon of ordinary learning and skill in his profession would have adopted in the case, must necessarily prejudice the defendant"

So in *Jones v. Angell,* 95 Ind. 376, it is said:

"The opinion of an expert in any art, science, trade, profession or mystery may be given where it is proper for the decision of a question relating to the issues in the case."

In *Challis v. Lake,* 71 N. H. 90, 51 Atl. 260, it is said:

"The hypothetical question addressed to the expert, Dr. Galvin, was unobjectionable. Upon an assumed statement of facts, suggested by the evidence, he was asked, in substance, what in his opinion ought reasonably to have been done by the attending physician; that is, what treatment a reasonably skillful physician would have adopted in such a case.

The competency of the question is so apparent as to admit of no serious discussion. *Spear v. Richardson,* 37 N. H. 23, 24; *Perkins v. Railroad,* 44 N. H. 223; *Wells v. Iron Co.,* 48 N. H. 491, 513, 540."

And in *Northern Pac. R. Co. v. Urlin,* 158 U. S. 271, it is said:

"The first assignment avers error in permitting the medical witnesses, who testified in behalf of the plaintiff, to be asked whether the examinations made by them 'were made in a superficial or in a careful and thorough manner.' . . .

"The second ground, that this question called for the opinion of the witnesses as to the manner in which the physical examinations were made, and thus supplanted the judgment of the jury in that particular, does not seem to us to be well founded. The obvious purpose of the question was to disclose whether the judgment of the physicians as to the plaintiff's condition was based on a superficial or on a thorough examination, and we think it was competent for the witnesses, who were experts, to characterize the manner of the examination."

The two cases last cited, it is true, do not present the exact question at bar, but we think they are clearly analogous. If it be competent for an expert medical witness to state what treatment a reasonably skillful physician would have adopted in a given case, or to give his opinion whether his examination of a person's condition was superficial or thorough, clearly he may give it as his opinion whether a given treatment was or was not ordinarily careful and skillful. For other cases supporting the rule, see: *Olmsted v. Gere,* 100 Pa. St. 127; *Jones v. Angell, supra; Wright v. Hardy,* 22 Wis. 334.

The trial judge reduced his charge to the jury in writing, and at the conclusion of the evidence, read the same to the jury. After he had concluded the reading, the respondent's counsel suggested a question on which he thought further explanation necessary, whereupon the judge gave an oral instruction on the matter. The oral instruction was taken down by the stenographer who was present, but was not

reduced to writing and given to the jury along with the general written instructions when they retired to consider of their verdict. Neither party at the time took exceptions either to the form or matter of the instruction, or requested that it be reduced to writing and given to the jury. The appellant, however, prior to the hearing on the motion for a new trial, filed a written exception to this particular instruction, on the ground that it was not reduced to writing and sent to the jury room along with the other instructions of the court. But we think the exception came too late. While it is true the statute provides that exceptions to the instructions of the court may be taken at any time before the hearing of a motion for a new trial, we think this must relate to exceptions to the sufficiency of the instructions as matter of law, and not to the manner in which they are given. The statute requiring instructions to be given in writing prior to the arguments of counsel to the jury, and requiring that they be sent to the jury room along with the pleadings and exhibits in the case, is not mandatory in the sense that the parties cannot waive the requirements. On the contrary, it is a common practice to waive some or all of them; and a party must be held to have waived them when he does not note his dissent at the time the breach of the rule is committed. This principle is not contrary to the rules in *Raynor v. Tacoma R. & Power Co.*, 70 Wash. 133, 126 Pac. 91. There exceptions were timely taken to the action of the court, but the court refused to correct its mistake after the opportunity for it to do so had been afforded. Here no such opportunity was given, and we think the severe penalty of a retrial of the cause should not be visited upon the successful party because of a mistake the fault of which lay equally upon all the parties.

Finally, it is said that the verdict is excessive. With this contention we are constrained to agree. The size of the verdict would indicate that the jury felt inclined to visit the entire loss suffered by the respondent upon the doctor, whereas he

was only responsible for the injury and suffering caused by his own acts, not those caused by the original injury with which he had nothing to do. It is not, however, necessary to award a new trial in the first instance. If the respondent will, within thirty days after the remittitur from this court reaches the lower court, consent in writing to remit two thousand dollars from the amount of the judgment, the judgment will stand affirmed for the sum remaining; namely, three thousand five hundred dollars. Otherwise a new trial will be awarded.

MOUNT, MORRIS, ELLIS, and MAIN, JJ., concur.