(June 9, 1915.)

LEONARD RUBLE et al., Appellants, v. JOHN BUSBY, Respondent.

[149 Pac. 722.]

COMPLAINT — PHYSICIAN AND SURGEON — MALPRACTICE — NEGLIGENCE— SKILL—EVIDENCE—INSTRUCTIONS.

1. Where an action is brought to recover damages on account of the wrongful, negligent and careless leaving of a sponge in the abdomen of a patient, and on account of the negligence of defendant in permitting said sponge to remain in said patient's abdomen an intestinal obstruction was created, resulting in a partial closing of a portion of the intestinal canal and causing a partial paralysis and obstructions thereof, and by reason of such wrongful and negligent acts and for no other reason and as a direct result thereof the patient died, it is incumbent upon the plaintiff to prove said allegations by a preponderance of the evidence and show that the presence of said sponge in the abdomen of the patient was the direct and proximate cause of the death of the patient.

2. *Held,* that the evidence is sufficient to show that the adhesive condition of the intestines of the patient caused her death and that

such adhesive condition was not caused by the presence of a sponge, and that the evidence is sufficient to support the verdict of the jury.

3. *Held,* that the court did not err in giving or refusing to give certain instructions.

4. *Held,* that the court did not err in refusing to admit certain evidence.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.   Hon. Robert N. Dunn, Judge.

Action to recover damages for alleged carelessness and negligence in leaving a sponge in the abdomen of a patient, which caused her death.   Judgment for defendant.   *Affirmed.*

John P. Gray and Frank M. McCarthy, for Appellants.

Plaintiffs' requested instruction No. 5 correctly stated the law in a case of this kind, and it was clearly erroneous for the court to refuse to give that instruction and to shift the burden upon the plaintiffs.   In a great number of cases heretofore decided this instruction has been approved and the law there laid down has been held to be the correct rule of law governing a case of this character.   (*Harris v. Fall,* 177 Fed. 79, 100 C. C. A. 497, 27 L. R. A., N. S., 1174; *Wharton v. Warner,* 75 Wash. 470, 135 Pac. 235; *Jones v. Tri-State Tel. & Telg. Co.,* 118 Minn. 217, 136 N. W. 741, 40 L. R. A., N. S., 485; *Zilke v. Johnson,* 22 N. D. 75, Ann. Cas. 1913E, 1005, 132 N. W. 640; *Reynolds v. Smith,* 148 Iowa, 264, 127 N. W. 192; *Akridge v. Noble,* 114 Ga. 949, 41 S. E. 78; *Gillett v. Tucker,* 67 Ohio St. 106, 93 Am. St. 639, 65 N. E. 865; *Palmer v. Humiston,* 87 Ohio St. 401, 101 N. E. 283, 45 L. R. A., N. S., 640.)

The burden was upon the surgeon in an action for malpractice to show that the leaving of a sponge in the body of a patient was not due to his negligence, and the burden was upon him to prove that he was not negligent in leaving it there.   (*Samuels v. Willis,* 133 Ky. 459, 118 S. W. 339, 19 Ann. Cas. 188.)   Instruction No. 3 given by the court was erroneous for the reason that it was contrary to the rule of law laid down in *McGraw v. Kerr,* 23 Colo. App. 163, 128

Pac. 870. (*Coleman v. Wilson,* 85 N. J. L. 203, 88 Atl. 1059.)

By instruction No. 11 the court invades the province of the jury for the reason that it was for the jury to say and not the court as to what proximately caused the death of Mrs. Ruble. (*Fleenor v. Oregon Short Line Ry. Co.,* 16 Ida. 781, 102 Pac. 897; *Pilmer v. Boise Traction Co.,* 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254.)

Black & Wernette and C. L. Heitman, for Respondent.

Instruction No. 3, as given by the court, correctly states the law applicable to this case. (*Samuels v. Willis,* 133 Ky. 459, 118 S. W. 339, 19 Ann. Cas. 188; *Whitesell v. Hill,* 101 Iowa, 629, 70 N. W. 750, 37 L. R. A. 830, and cases cited in note; *Force v. Gregory,* 63 Conn. 167, 38 Am. St. 371, 27 Atl. 1116, 22 L. R. A. 343; *Dorris v. Warford,* 124 Ky. 768, 100 S. W. 312, 9 L. R. A., N. S., 1090, 14 Ann. Cas. 602.)

There can be no recovery if no injury resulted from the act of the physician. (*Craig v. Chambers,* 17 Ohio St. 253.)

The plaintiff must show, not only that the physician was negligent or unskillful, but also that the injury resulted from such neglect or unskillfulness. (*Ewing v. Goode,* 78 Fed. 442.)

The burden is on the plaintiff to show that the injury resulted from the negligence of the physician. (*Chase v. Nelson,* 39 Ill. App. 53.)

Where the evidence on material facts is conflicting or where on undisputed facts reasonable and fair-minded men may differ as to the inference and conclusion to be drawn, or where different conclusions might reasonably be reached by different minds, the question of negligence is one of fact to be submitted to the jury. (*Fleenor v. Oregon Short Line,* 16 Ida. 781, 102 Pac. 897.)

SULLIVAN, C. J.—This action was brought by Ruble, the surviving husband of Dollie May Ruble, and John Grove, the surviving father of decedent, against the respondent, who is a practicing physician at Coeur d'Alene, for malpractice and negligence, and it is alleged that the negligence on the

part of the respondent caused the death of Dollie May Ruble.

It is alleged that in performing a surgical operation on said deceased to remove the ovaries, Fallopian tubes and veriform appendix the defendant negligently permitted a gauze or cheese-cloth sponge to remain in the abdomen of the decedent at the conclusion of said operation, and that the negligent leaving of said sponge, as aforesaid, directly resulted in the death of said patient.

In his answer the respondent denied that he negligently or in any manner or at all left the alleged sponge or any sponge in the abdomen of said patient and denied that said sponge being so left or permitted to remain in the abdomen of said Dollie May Ruble was the direct cause of her death, and denied specifically all allegations of negligence in the performance of the operation, as charged in the complaint, and as an affirmative answer and defense alleged the facts as to his education, qualifications, training and experience as a medical practitioner, and recites further facts with reference to the said operation and his dismissal from the case on the ninth day after the operation.

Upon the issues thus made the cause was tried by the court with a jury and a verdict was rendered against the plaintiffs and in favor of the defendant, and judgment was entered accordingly. A motion for a new trial was denied and the appeal is from the judgment and order denying a new trial.

The assignments of error are based on the action of the court in entering judgment and in denying the motion for a new trial, and the giving and refusing to give certain instructions, and also in refusing to admit certain offered evidence.

Appellants state in their brief that there is very little controversy regarding the facts and very little conflict in the testimony of the case, while it is contended by counsel for respondent that upon the principal issue made by the pleadings the evidence is very conflicting.

The record shows that the defendant has been a practicing physician and surgeon for twenty-three years and is a graduate of McGill University, Montreal, Canada, and that that school is a well-recognized medical institution; that he has

taken several post-graduate courses in the leading medical institutions of the country, and that he has been engaged in the practice of his profession as a general practitioner and surgeon for twelve years in Idaho.

The following facts appear from the record:

The respondent was first consulted by Mrs. Ruble, the decedent, and who will hereafter be referred to as the decedent or patient, on October 21, 1911, concerning her malady for which the operation in question was performed. At that time and at the time of the subsequent consultations, she had an anaemic complexion, was emaciated and extremely nervous. She informed the respondent that several years prior to said consultation she had an attack of inflammation of the bowels and peritonitis lasting for several weeks and that she had never been well since; that she had trouble all the time with constipation. The respondent made an examination of the decedent and then advised her that she could not obtain relief until an operation was performed to remove the pus tubes. She informed respondent at that time that other physicians had also advised an operation. She again visited respondent on February 23, 1912, when her physical condition and appearance were about the same as at the first examination. She again consulted respondent on March 9, 1912, and her condition was about the same, and again on May 4, 1913. At that time she stated to respondent that she desired to have an operation performed. On the 6th or 7th of May, 1913, she again consulted respondent and again informed him that she desired to have the operation performed. The matter was thereafter explained to the appellant Ruble and he informed the respondent that he left the matter wholly with the decedent. The decedent arranged to go to the Coeur d'Alene Hospital for the operation, and went there on the evening of May 14, 1913, when the usual preliminary precautions were taken. Doctors Hunter and Dwyer, two regular practicing physicians of Coeur d'Alene, assisted in the operation.

It is not contended that respondent was guilty of any negligence in the performance of said operation, with the excep-

tion that he was negligent in that he failed to remove one of the sponges used in said operation from the abdomen of the decedent.

Respondent in his testimony states the condition in which he found the intestines and all of the organs in that part of the abdomen. He found them all bound together by adhesions and testified as follows:

"In this mass of adhesions on the right side there was a loop of the small intestine that came down and was connected into this mass of adhesions. That showed positively in the first place where the attack of peritonitis that Mrs. Ruble had eight years ago originated from. It originated from the ruptured tube and the tube ruptured was the right tube of the ovary. By this attack of inflammation of the bowels, part of the bowels had become caught in the adhesions and had remained there from the time she had this attack of peritonitis until she had this operation."

Witness then testifies that he loosened and broke up said adhesions. But, as before stated, there is no negligence charged as to the performance of said operation except that of not removing said sponge.

After the operation had been performed and the incision was about to be closed, Dr. Dwyer said to the respondent in a low voice that the nurse had reported that a sponge was missing. The respondent testified that he did not hear the nurse make the statement but heard what Dr. Dwyer said, and testified as follows:

"I stopped right then and went over this abdomen carefully, I went over every part of the abdomen; and there was no occasion for any sponge to be in that abdomen at all, but I went—now, remember the bowels in that woman were in a horizontal position as bowels naturally come down and filled the pelvis—filled the lower part of the pelvis and resumed their natural position. I put my hand down and went over the pelvic region—went over the lower part of the abdomen and satisfied myself positively that there was no sponge there. I said to Dr. Dwyer, 'I know there is no sponge

there.' I took sufficient time; there was no occasion to be in a hurry. . . . . After I satisfied myself positively that there was no sponge there, I proceeded to close the abdomen in the usual way. . . . . There was no sponge used in the abdomen unless it had a forceps attached."

"Q. You used forceps that day on every small mop or sop sponge you inserted in that abdomen?

"A. Yes, it was necessary to do so if you are going to use sponges at all. If you put a sponge in with your hand—if you have the sponge in your fingers it naturally would obstruct the view; it was necessary to use forceps on the sponges because you could not see what you were doing if you used your hand.

"Q. What was the size of those forceps attached to this mop sponge?

"A. The regular sponge forceps. The sponge forceps used at this hospital; we had two pairs of sponge forceps; they are about 15 inches long; they are the long (Young?) forceps with the Smith opening."

Dr. Dwyer, who assisted in the operation, testified on this point as follows:

"Q. Did Dr. Busby, on the day of this operation, use any of these small sponges without their being used by means of one of these forceps, as you have explained?

"A. None inside of the abdominal cavity.

"Q. If he used them, where did he use them without being fastened to forceps?

"A. On the outside of the abdominal cavity entirely.

"Q. In what part of the operation?

"A. During the opening of the abdominal wall and during the removal of the appendix, when it was brought up outside of the abdomen.

"Q. Did Dr. Busby, at the time of the performance of this operation, at any time place one of these small sponges inside of the abdominal cavity of Mrs. Ruble and leave it there for any length of time?

"A. He did not.

"Q. Did he place one of this kind of sponge in the abdomen of Mrs. Ruble at any time without it being clamped to one of these forceps?

"A. He did not.

"Q. Was your position and were your duties such that you would see what he was doing?

"A. I could see everything and did see everything, I believe."

Dr. Dwyer also testified that the nurse reported about or at the time the incision was about to be closed up that there was one sponge short, and that he did not think the respondent heard what the nurse had said and he, Dwyer, repeated it to him. At that time the operation was practically completed with the exception of closing the incision. Dr. Dwyer further testified as follows:

"Q. State what was done by you or Dr. Busby after that time, after the sponge was reported missing.

"A. Dr. Busby inserted his hand in the abdominal cavity and made a thorough search.

"Q. State what he did.

"A. He made a search of the entire field of operation. All through the pelvic cavity as far as I could see from the position of his hand, he went entirely over the field that had been operated on.

"Q. If you know, how much time did he consume in doing that?

"A. I don't know exactly; probably three to five minutes."

Dr. Dwyer also testified that he was watching Dr. Busby as he was making the search after the sponge had been reported missing and that Dr. Busby made a careful search for it.

The evidence also shows that the patient had been on the operating table about an hour and three-quarters at the time the incision was closed.

The operation was performed on the morning of the 15th of May, 1913, and the evidence shows that the patient continued to do fairly well up to the 24th of May, when the

respondent was unceremoniously dismissed from the case and Doctors Scallon, Shephard and Dorland took charge of the case, and on the morning of the 25th of May Dr. Dorland, assisted by Doctors Shephard and Scallon, performed a second operation upon the decedent, they having prior to that time learned that a sponge was missing that was used during the first operation. They performed the operation by making an incision in the same place it was made at the first operation. They used a number of sponges in this second operation. Immediately after the incision was made Dr. Dorland inserted his hand in the incision and made a search for the lost sponge, and after making a careful search was unable to find it. Then Dr. Shephard inserted first one hand and then the other in the incision and made a careful search for the sponge and failed to find it; then Dr. Dorland inserted his hand again in the incision and made a careful search and failed to find the sponge, and then not satisfied, Dr. Shephard made another search and testified that he found a sponge.

Thus it appears that Doctors Shephard and Dorland made five distinct searches before it is claimed they found said sponge, Dr. Shephard having made one search with one hand and when he made the second search he used first one hand and then the other. Dr. Shephard testified that said sponge was about two-thirds of the size of one's fist. It no doubt seemed remarkable to the jury that five careful searches for a substance of that size in the cavity of an abdomen would need to be made in order to find said sponge, and while the testimony of appellants shows that Dr. Shephard finally discovered the sponge, the jury evidently did not believe that testimony, or if they did believe that the sponge was found, they did not believe that that was the proximate cause of decedent's death, and may have come to the conclusion that the five searches made, covering a considerable period, might have contributed greatly to the cause of her death.

It is sufficient to say that Dr. Busby testified that after the nurse reported the sponge missing, he made a most careful examination and satisfied himself positively that there was no sponge there. And it further appears that no sponge was

used in the abdomen unless it had forceps, about fifteen inches in length, attached to it.

Some of the physicians who were witnesses in the case testified that in their opinion the proximate cause of the death of the decedent was the leaving of the sponge in the abdomen, while others testified that in their opinion the proximate cause of her death was the adhesions of the intestines, and so far as the evidence is concerned, it is amply sufficient to sustain the verdict of the jury.

In the brief of appellants it is stated as follows: "The appellants in presenting this case to the court intend to confine their argument to a discussion of the legal principles involved, rather than to a discussion of the facts in the case"; they then proceed to argue that certain instructions requested and refused by the court contained the correct rules of law as applicable to this case, and that those instructions given by the court were contrary to the law as laid down by the decisions of other courts. The instructions requested and refused were to the effect that it was malpractice and negligence *per se* to leave a sponge in the abdomen of a patient after closing the incision, and when that fact was shown, it devolved upon defendant to show that the sponge was not the proximate cause of the patient's death.

In the complaint, after charging negligence on the part of respondent in leaving the sponge in the abdomen of the decedent, in paragraph 11 it is alleged as follows:

"That on account of the defendant so wrongfully, negligently, unlawfully and carelessly leaving said sponge in the abdomen of said patient and so inclosing the same, and on account of the negligence of the defendant in so permitting said sponge to remain as aforesaid in the said patient's abdomen upon and during the days and each of the days aforesaid, to wit, on and between the 15th day of May, 1913, to and including the 25th day of May, 1913, an intestinal obstruction was created and negligently permitted by defendant to be maintained in the body of said patient caused by the presence of said sponge, resulting in a partial closing of a portion of the intestinal canal, and causing a partial paraly-

sis and irritation thereof, preventing the normal passage of intestinal contents through such canal, and that by reason of the wrongful, unlawful, careless, negligent and unskillful acts of the defendant as hereinbefore stated, and because of no other reason and as a direct result thereof, the said Dollie Ruble died intestate on the 3d day of June, 1913.''

It was necessary under those allegations to prove that the respondent left or permitted said sponge to remain in the abdomen of the patient, by reason of his carelessness, negligence or lack of proper skill or care, and it was also incumbent upon appellants, under those allegations, to prove that the presence of the sponge alleged to have been left or permitted to remain in the abdomen of the patient was the direct or proximate cause of the death of the patient.

Plaintiffs' requested instruction No. 5, which was refused by the court, and of which appellants apparently complain most seriously, did not contain a statement in connection with it regarding the sponge being the cause of the death of the patient, hence if the requested instruction were correct in so far as it goes, it would not have been a proper instruction to give under the pleadings and facts and evidence in the case, for the reason that it was incumbent upon appellants to prove, in addition to the leaving of the sponge, that the leaving of the sponge was the direct and proximate cause of the death of the patient. Said requested instruction No. 5 is as follows:

''The court instructs the jury that it is ordinarily malpractice to leave a gauze or cheese-cloth sponge in the body of a patient when closing the incision after an operation, and in this case, if you find from the evidence that the defendant did leave a gauze or cheese-cloth sponge in the body of Dollie May Ruble when closing the incision after the operation, which the evidence shows that he performed upon her, the burden is upon the defendant to show that the so leaving of said gauze or cheese-cloth sponge in her body after said operation was not negligence.''

Appellant cites several cases in support of the correctness of said requested instruction, among them *Harris v. Fall,*

177 Fed. 79, 100 C. C. A. 497, 27 L. R. A., N. S., 1174. On a careful reading of that case, we do not think it supports the contention of appellant. In fact, it simply holds that whether or not the operating physician was negligent was a question for the jury to determine. Other cases are cited by appellants, but on an examination of them we think they are clearly distinguishable from the case at bar.

In this case the evidence shows what the respondent did in the way of determining whether or not any sponge was actually left remaining in the abdomen of the patient. His testimony is corroborated by the testimony of Dr. Dwyer, which shows that great care was used on the part of respondent. This is a case where the defendant did offer evidence showing the exercise of the care and skill which ought to be exercised by an operating physician in a case like this. The instructions to the jury ought to conform to the facts and evidence as produced on the trial. In the instant case the defendant met by evidence every charge of negligence made against him, and showed the degree of care and skill that he exercised, and it would have been erroneous for the court to instruct the jury, under the evidence, as requested by appellants.

The jury was called upon to determine from the evidence whether the proximate cause of the death of the patient was the negligence of the respondent in the performance of said operation, and it devolved upon the plaintiffs to prove the material allegations of the complaint by a preponderance of the evidence, and the court correctly instructed the jury that in order for the plaintiffs to recover, they must satisfy the jury by a preponderance of evidence as to the justice of their claim; that they must produce evidence in support of the material allegations of the complaint, which in the judgment of the jury outweighs the evidence of the defendant. In other words, if the testimony was evenly balanced, they must find for the defendant, and the plaintiffs could recover only in case their testimony outweighed that of the defendant. One of the allegations of the complaint was that the respondent negligently and carelessly left in the abdomen of the

decedent a certain sponge which caused her death, and it was necessary for them to prove that the result of the alleged negligence was the cause of the death of the patient in order to recover in this case.

Upon a careful review of the instructions given, we are satisfied that they fairly cover the case made by the pleadings and the evidence, and that there was no error in refusing to give certain instructions requested by plaintiffs, or in the giving of certain instructions by the court.

The appellants specifically complain of an alleged error committed by the court in his ruling on the evidence, which was to the effect that the court refused to permit the plaintiff Ruble to prove on rebuttal a conversation which he claimed took place between the respondent and himself about a week prior to the operation, to the effect that the respondent stated that the patient was in excellent condition to submit to an operation. This identical conversation was gone into by appellants in their direct testimony when practically the identical question was asked and the conversation testified to by the plaintiff Ruble.

We cannot see the materiality of this evidence, since negligence is not charged by reason of the performance of the operation when the patient was not in a physical condition to undergo the operation, but by reason of negligence in the performance of the operation in leaving the sponge in the patient's abdomen. The respondent produced competent evidence to show that the death of decedent was caused by intestinal obstructions caused by intestinal adhesions, commonly known in surgery as post-operative adhesions. On cross-examination respondent proved by witness Shepard that these adhesions of this particular kind of intestinal obstruction are frequent following operations, and that they are feared by physicians and not necessarily caused by foreign substances being present, but are caused, among other things, by raw surfaces of the intestines coming together, which raw surfaces are sometimes caused where old adhesions have been broken up in the performance of an operation. Dr. Shepard testified that he had never had but three cases where there

were post-operative intestinal obstructions, and in each case the patient died.

Doctors Dorland and Shepard both testified that when they performed the operation where they claim to have found the sponge, the intestines were all matted together with intestinal adhesions, and that they loosed them in performing this operation, and that when they performed the post-mortem examination ten days later, the adhesions had reformed. It is thus made to appear that after Doctors Dorland and Shepard performed their operation the adhesions again formed and clearly appeared when the post-mortem examination was held. They testified that in their opinion the sponge caused the adhesions. On the other hand, respondent showed by a number of physicians that post-operative adhesions are very common following operations of this kind and that they produce intestinal obstructions which cause death, and the symptoms in this case indicated that the death of the patient was caused by an intestinal obstruction produced by post-operative adhesions, and that even if a sponge had been left in the manner this one was alleged to have been left, it would not have produced the symptoms present.

All of this evidence was presented to the jury under instructions given by the court, which were practically to the effect that if the jury found that the defendant had carelessly or negligently or through failure to exercise ordinary care and skill left a sponge in the said patient which caused her death, then the verdict should be for the appellants.

It is apparent from the evidence in the case that the patient after having been operated on and her intestines found to be one adhesive mass and the adhesions separated, and ten days after another operation was performed when five careful searches were made through her intestines for a sponge that was supposed to be lost and her intestines found at that time to be again an adhesive mass, and the adhesions again broken up and the intestines separated, the jury was fully justified in finding under such evidence in favor of the defendant.

We find no reversible error in the record and the judgment must be affirmed, and it is so ordered, with costs in favor of the respondent.

Budge and Morgan, JJ., concur.