## LAUGHLIN v. CHRISTENSEN.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1924.)

No. 6432.

1. **Physicians and surgeons ⊂⊃18(7) — When expert testimony is indispensable to establish negligence.**

The reason for the rule that in certain cases testimony of experts is indispensable to establish negligence is that, in order to reach an intelligent conclusion thereon, a scientific exposition of the subject under consideration is obviously necessary, but when the reason for the rule ceases the rule itself ceases.

2. **Physicians and surgeons ⊂⊃18(7)—Expert testimony held not indispensable to establish negligence of a surgeon in leaving a gauze sponge in the abdominal cavity of a patient.**

On the issue whether it was negligence for a surgeon to leave a gauze sponge, of considerable size, in the abdominal cavity of a patient after an operation, expert testimony *held* not indispensable.

3. **Evidence ⊂⊃553(1)—Opinion of expert may not be incorporated in hypothetical question to another expert witness.**

It is not allowable in asking a hypothetical question of an expert witness to incorporate into it the opinion of another expert.

4. **Evidence ⊂⊃553(2)—What facts hypothetical question must cover determined by sound discretion of trial judge.**

What facts a hypothetical question must cover is to be determined by the sound discretion of the trial judge.

5. **Evidence ⊂⊃75—No presumption from failure to produce irrelevant testimony.**

In an action against a surgeon for malpractice, where the issue was whether defendant, negligently left a sponge in the abdominal cavity of plaintiff after an operation, no adverse presumption can arise from the failure to call as a witness a physician who had treated plaintiff before and after the operation, but who was not present at the operation, nor when the sponge was removed.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action at law by Margaretha Christensen against George M. Laughlin. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles E. Rendlen, of Hannibal, Mo. (Rendlen & White, of Hannibal, Mo., and Higbee & Mills, of Lancaster, Mo., on the brief), for plaintiff in error.

Frank E. Sheehan, of Omaha, Neb. (Berryman Henwood, of Hannibal, Mo., Edward P. Smith, Francis S. Howell, and William A. Schall, all of Omaha, Neb., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

BOOTH, District Judge. This is an action for damages for malpractice. For brevity the parties will be designated as in the court below. From a judgment in favor of plaintiff, defendant brings error. There was substantial evidence tending to establish the following facts:

Plaintiff, a woman about 48 years of age, residing in Nebraska, having been ill and under the care of physicians for some time, finally went to Kirksville, Mo., where defendant, in his hospital, on January 18, 1921, performed a surgical operation upon her. Plaintiff was in the operating room about 55 minutes. Her left ovary and both tubes were removed, and the retroverted uterus sewed up to the abdominal muscles. She remained in the hospital until February 10, 1921, when she returned to her home. While still in the hospital, but some days after the operation, plaintiff complained to the nurse several times of burning pain in the abdomen, but was told that it would disappear when the wound healed. After her return home, the pain still continuing, plaintiff consulted local doctors and was treated by them at intervals until after June 11, 1921. About March 14, 1921, an abscess, which had formed, broke through the scar tissue where the incision had been made for the operation. Pus was discharged in considerable quantities at first, and in lesser quantity from time to time thereafter. On June 19, 1921, the nurse, in attendance upon plaintiff at her home, discovered while dressing plaintiff's wound what appeared to be a thread protruding from the wound; she took hold of the thread with a pair of tweezers and pulled up to the opening of the wound a piece of gauze. She fastened the gauze so that it could not slip back into the wound and called the attending physician. With the aid of forceps he pulled the gauze from the wound. It was saturated with pus. It was folded in the manner of gauze sponges in common use in surgical operations. When unfolded it was about 18 inches long and 8 inches wide. From the time of the extraction of the gauze sponge until the time of the trial in December, 1922, pus and fecal matter were discharged from the wound, indicating that a fecal fistula had been formed.

Plaintiff claimed that the defendant had negligently left this gauze sponge in her abdominal cavity at the time of the operation, and the verdict of the jury sustained her contention. The assignments of error raise the following questions:

(1) Whether there was any substantial evidence for the jury that the gauze sponge was left in plaintiff's abdominal cavity by defendant.

(2) If so, whether there was any substantial evidence that it was negligently left there.

(3) Whether a certain hypothetical question propounded by defendant's attorney to a surgeon (witness for defendant) was improperly excluded.

(4) Whether a requested instruction as to the failure of Dr. Moak (one of plaintiff's doctors, before and after the operation) to testify was improperly refused.

1. As to the first question, the evidence shows that gauze sponges were used by the defendant at the operation. He and the nurse who assisted him, however, testified that no sponge was left in plaintiff's abdominal cavity after the operation; they based their testimony on a custom which they testified existed of always counting the sponges before and after an operation and of ascertaining that the numbers tallied. There was also evidence on the part of the defendant that the sponge which was claimed to have been found in the plaintiff differed slightly in size and texture from those used by the defendant at the time of the operation. There was also testimony that if a sponge had been left in plaintiff on January 18, 1921, the date of the operation, it would have become greatly decomposed by June 19, the date when it was claimed the sponge was found; but that the sponge which was claimed to have been found was very little decomposed. On the other hand, the testimony was well corroborated that a gauze sponge was taken from the abscess opening which had formed in plaintiff at the point of the operation. Plaintiff testified that the operation by defendant was the only one that she had ever undergone; she testified further that she began to feel discomfort and burning pain in the region where the abscess later appeared, shortly after the operation, and that the pain increased and continued until the sponge was removed. No explanation, except that claimed by plaintiff, was suggested to account for the presence of the sponge in plaintiff's abdominal cavity.

A careful consideration of all of the testimony has led to the conclusion that the question whether the sponge was left in the plaintiff's abdominal cavity by the defendant was properly submitted to the jury.

2. Was there evidence that the sponge was negligently left by defendant? The case was tried on the assumption by counsel and court that in view of the pleadings the doctrine of res ipsa loquitur did not apply. Without passing upon the correctness of that position, we proceed upon the same assumption here.

It is pointed out by defendant's counsel that there was no expert testimony offered on the question of negligence and it is insisted that the only admissible evidence on this question would be testimony of medical experts. This conclusion is reached by counsel, apparently, by arguing:

(1) That medical experts are the only persons qualified to testify whether the operation was negligently performed; and

(2) That the handling of the sponges was but a part of the operation.

The argument is ingenious, but it has failed to persuade us. It is true that there is a large class of malpractice cases in which the question or matter under investigation is so intricate and abstruse, or so little understood, that ordinary jurors would in all probability, know nothing about the same, but must be guided by opinions of witnesses having special knowledge. In this class of cases the plaintiff fails to make a case for the jury in the absence of testimony of a properly qualified expert witness.

In Ewing v. Goode (C. C.) 78 Fed. 442, Judge Taft, now Chief Justice, said: "But when a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."

The same general rule is laid down in many cases, of which the following are merely examples: De Long v. Delaney, 206 Pa. 226, 55 Atl. 965 (failure to use a turniquet); Henslin v. Wheaton, 91 Minn. 219, 97 N. W. 882, 64 L. R. A. 126, 103 Am. St. Rep. 504, 1 Ann. Cas. 19 (negligence in use of X-ray); Martin v. Courtney, 75 Minn. 255, 77 N. W. 813 (negligence in treatment of sepsis); McGraw v. Kerr, 23 Colo. App. 163, 128 Pac. 870 (negligence in diagnosing and treating fractured humerus); Pettigrew v. Lewis, 46 Kan. 78, 26 Pac. 458 (negligence in operating on an eye for strabismus); Taylor v. Kidd, 72 Wash. 18, 129 Pac. 406 (negligence in treatment of anchylosed condition of shoulder joint); Loudon v. Scott, 58 Mont. 645, 194 Pac. 488, 12 A. L. R. 1487 (negligence in administering an anæsthetic).

There are, however, at least two other

classes of cases dealing with the admission of expert testimony on the issue of negligence. (1) Those in which the question or matter under investigation is so simple that the jurors are as well able as experts to pass upon the same. Admission of expert testimony in this class of cases, is error. Milwaukee Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Inland Co. v. Tolson, 139 U. S. 551, 559, 11 Sup. Ct. 653, 35 L. Ed. 270; Lake v. Shenango Furnace Co., 160 Fed. 887, 903, 88 C. C. A. 69; Henion v. Railroad, 79 Fed. 903, 25 C. C. A. 223; National Biscuit Co. v. Nolan, 138 Fed. 6, 70 C. C. A. 436; Hunt v. Kile, 98 Fed. 49, 38 C. C. A. 641. (2) Those cases in which the question or matter under investigation is of such character that the opinion of expert witnesses thereon, though not indispensable, may yet be of material assistance to the jury. In this class of cases the admission or rejection of expert testimony rests in the sound discretion of the court. U. S. Smelting Co. v. Parry, 166 Fed. 407, 92 C. C. A. 159; U. S. v. Railway Company, 250 Fed. 382, 162 C. C. A. 452; Gillespie v. Collier, 224 Fed. 298, 139 C. C. A. 534.

Furthermore, it is not a universal rule, even when the alleged negligence of medical men is under consideration, that testimony by experts is indispensable. The following so-called "sponge" cases have been called to our attention: Niebel v. Winslow, 88 N. J. Law, 191, 95 Atl. 995; Cassingham v. Berry, 67 Okl. 134, 150 Pac. 139, 168 Pac. 1020; Ruble v. Busby, 27 Idaho, 486, 149 Pac. 722, Ann. Cas. 1917D, 665; Akridge v. Noble, 114 Ga. 949, 41 S. E. 78; Palmer v. Humiston, 87 Ohio St. 283, 101 N. E. 283, 45 L. R. A. (N. S.) 640; Samuels v. Willis, 133 Ky. 459, 118 S. W. 339, 19 Ann. Cas. 188; Harris v. Fall, 177 Fed. 79, 100 C. C. A. 497, 27 L. R. A. (N. S.) 1174. But in no one of these cases is such a rule laid down or applied. On the other hand, in Davis v. Kerr, 239 Pa. 351, 86 Atl. 1007, 46 L. R. A. (N. S.) 611, it was held, that if a sponge was proven to have been left in the abdominal cavity, the burden would be thrown upon the defendant to show that there was no negligence, and that a count of sponges by the nurse before and after the operation would not be conclusive.

In Ruth v. Johnson, 172 Fed. 191, 96 C. C. A. 643, it was admitted on the record by both parties that the leaving of a sponge in the abdominal cavity after an operation would constitute negligence. In Reeves v. Lutz (Mo. App.) 162 S. W. 280, which was a case where a drainage tube was placed in a wound after an operation, and the wound was allowed to heal over it, the court said: "No one can doubt such was negligence"—citing Ruth v. Johnson, supra.

The case of Toy v. Mackintosh, 222 Mass. 430, 110 N. E. 1034, Ann. Cas. 1918C, 1188, is interesting as involving in the same case one question on which it was held expert evidence was not necessary, and also a second question on which it was held that expert evidence was indispensable. Plaintiff employed defendant to extract several teeth. Defendant put plaintiff under the influence of an anæsthetic and pulled the teeth. He allowed one of the teeth to fall into plaintiff's throat, and it ultimately lodged in plaintiff's lung. Later, plaintiff suffered hemiplegia and aphasia, which he claimed were the result of the tooth lodging in the lung; the tooth was finally coughed up. Plaintiff in presenting his case offered no expert evidence; a motion by defendant for a directed verdict was denied; plaintiff had a verdict.

It was held, in the appellate court, that the question of negligence on the part of the defendant in allowing the tooth to drop into plaintiff's throat was for the jury, although plaintiff produced no expert evidence on the subject, and though defendant produced expert evidence that the dropping of the tooth in plaintiff's throat was consistent with due care. It was held, further, that the question whether the hemiplegia and aphasia were caused by the lodging of the tooth in plaintiff's lung was one on which expert testimony was necessary; and that plaintiff could not recover damages for those conditions in the absence of such testimony, since a determination of the question whether those conditions could be the result of the tooth lodging in the lung was not a matter of common knowledge and observation.

[1, 2] The reason for the rule, that in certain cases testimony of experts is indispensable to establish negligence, is that, in order to reach an intelligent conclusion on the question of negligence in those particular cases, a scientific exposition of the subject under consideration is obviously necessary; but when the reason for the rule ceases the rule itself ceases. In our judgment no such scientific knowledge was necessary in order to pass upon the question whether the sponge was negligently left in plaintiff's abdominal cavity, by defendant, in the instant case. No question of science was involved. The defendant himself testified that

a sponge would not be left in plaintiff purposely, and that in fact it was dangerous to the patient to leave a sponge in the abdominal cavity after an operation. The method pursued by defendant and his assistant to learn whether a sponge had been left in the patient was explained to the jury; the jury were competent to say whether this method was of such a kind as to constitute due care; also whether the method was carried out with due care in the instant case. In other words, whether defendant and his assistant did in fact count the sponges after the operation and find the same number as they had before the operation. These questions required no technical skill or special training to decide.

We are not called upon in the present case to decide whether expert testimony would have been admissible, if offered, on the part of plaintiff. We hold that such evidence was not indispensable, and that there was sufficient evidence to go to the jury on the question of negligence on the part of defendant.

3. The part of the record relating to the alleged error in excluding a hypothetical question is as follows:

"Q. If a patient, a woman, age about 48 or 49, had undergone an operation wherein the abdominal cavity was entered, and the left ovary and left tube and right tube were removed, and the uterus was retroverted, but in the operation it was placed in its normal position, and then fastened to the walls of the abdomen, and later and subsequent thereto there was a fecal fistula manifested itself and became present in the woman, leading from the smaller intestines to the surface of the abdomen in the scar produced in the median line where was the original incision, and it had discharged pus, and at times and later, after discharging pus for a period, fecal matter had come through, but that the person's or patient's bowels had continuously and at all times moved through to the anus, and this fistula tract had discharged these matters for a period of perhaps a year, *and had gradually gotten less and less until the tract, so far at least as the surface was concerned, had healed over with firm healthy tissue,* what would you say as to the probability or improbability of that fistula tract being permanently healed?

"Mr. Howell: I object, for the reason, it being a hypothetical question, does not correctly reflect the testimony, and particularly in that it presumes and assumes there is testimony that the bowels always moved through the anus; and in the further particular, it omits showing that feature of the testimony to the effect that this opening he speaks of that was healed over in the last few days had been healing over before pus forming, and that it would break open again, heal up again, and pus form and break open again, and so on. I think the question is manifestly not intended to aid the jury but to confuse the jury.

"The Court: There are some elements evidently left out of it.

"Mr. Rendlen: I should like to embody them.

"The Court: If counsel will again indicate them. And I say this of my own motion; that you should say that the scar had apparently healed over with healthy tissue; and that, as I recall the testimony, also the bowels always had moved to an extent, and part of the fecal matter or excrement having passed in the normal way and a part in an abnormal way through a fecal fistula.

"Mr. Rendlen: All right; embody those things.

"Mr. Howell: There is an omission to state the important part that I indicated; and assuming, further, if you want to put it in the form of a question; it omits to submit to this doctor, in substance, the following very essential and very material parts of testimony: That at some time after this, some time after this abscess formed, it broke and discharged pus; and some days, perhaps weeks, afterward, a gauze was taken from the sore, which was saturated with matter and pus, and that shortly after that, fecal matter was discharged from the opening in greater quantities than went through the anus; and that this continued along for weeks and months, gradually diminishing, until after awhile there would be times when the scar or opening in the abdomen would heal up apparently, and then cease to have therefrom any discharge of fecal or other matter, for some days; afterwards new formations of pus would accumulate and this opening would break open again and when the pus was discharged it would heal over again and then new pus would form, and it would break open again, and so on, from time to time; and that last Saturday it broke and discharged some pus; and that on Monday it appeared to be healed over apparently, as reflected by the amended question your honor put in there. I object to any submission that does not in good faith and substantially incorporate those things in order to give the expert a fair and

honest conception of what the theory of this case was.

"Mr. Rendlen: We will, with the court's permission, embody all Mr. Howell said with respect to the matter, save and except that there was a discharge on Saturday and that there was a hole and opening there; we submit the question with all those additions made, either by court or counsel, save and except the one that there was a discharge there Saturday. I so propound the question, your honor.

"Mr. Howell: Does the question include Saturday?

"Mr. Rendlen: It eliminates Saturday.

"Mr. Howell: I think there was some testimony that there was a discharge Saturday.

"Mr. Rendlen: We did not choose to embody that in our question for the reason we do not think we are bound by that statement, because there is evidence in here that such could not have been the case as manifested by the present condition of the tissue over the opening or alleged opening; and we do not want to assume that controverted fact.

"The court: No testimony except testimony that that might have been the condition. The direct testimony is that that was the condition. I will sustain objection to it in that form."

It is the general rule that all of the material facts should be embodied in a hypothetical question, if only one question is to be asked, and only one was suggested in the present case. It is also the rule that if some of the facts are in dispute, then each party may frame his hypothetical question to include the facts as he claims the evidence shows them to be. 22 C. J. 711; City of Port Washington v. Thacher, 245 Fed. 94, 157 C. C. A. 390.

[3] This latter rule is the one which the defendant invokes, but the rule is not applicable to the hypothetical question involved in the instant case. The hypothetical question proposed called for an opinion whether the fistula tract in plaintiff was permanently healed. There was positive testimony that the tract was open only a few days before the trial; and that it alternately was open and closed for a considerable period before the trial. The defendant claimed, however, that he was not bound by this testimony, and that testimony on his behalf showed that it could not have been open for some considerable time, and that this, in substance, was embodied in his hypothetical question. But the testimony on this point which defendant thus embodied in his hypothetical question was not testimony as to a fact, but consisted of the opinion of an expert who had very recently examined plaintiff. It is the rule that it is not allowable in asking a hypothetical question to incorporate into it the opinion of another expert. 22 C. J. 707, 712; Louisville & Nashville Ry. v. Falvey, 104 Ind. 409, 421, 3 N. E. 389, 4 N. E. 908; In re Barber's Estate, 63 Conn. 393, 408, 27 Atl. 973, 22 L. R. A. 90; Crozier v. Mpls. St. Railway, 106 Minn. 77, 118 N. W. 256; Nardinger v. Ladies of the Maccabees, 138 Minn. 16, 163 N. W. 785; Kearner v. Charles S. Tanner Co., 31 R. I. 203, 76 Atl. 833, 29 L. R. A. (N. S.) 537.

[4] Furthermore, what facts a hypothetical question must cover are to be determined by the sound discretion of the trial judge. Napier v. Greenzweig, 256 Fed. 196, 167 C. C. A. 412. We hold that the proposed hypothetical question was properly excluded.

[5] 4. As to the alleged error in refusing the requested instruction relative to the failure of plaintiff to call Dr. Moak as a witness. Without questioning the rule of law stated by the defendant on this matter, it is our judgment that the facts in the case did not warrant the application of the rule. The vital question in the case was as to the negligence of the defendant in leaving the sponge in the abdominal cavity of plaintiff. Dr. Moak was not present at the operation; he was not present when later the sponge was removed from plaintiff; and the record does not even show that Dr. Moak was available as a witness at the time of the trial.

Under the circumstances, the requested charge, in our judgment was properly refused.

The judgment is affirmed.